## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

IN RE:

                                            Case No. 09-12616-MAM

       BENDER SHIPBUILDING &
       REPAIR CO., INC.

                DEBTOR

**INTERIM ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364, 503 & 507 AND BANKRUPTCY RULES 2002, 4001 & 9014 APPROVING AND AUTHORIZING DEBTOR TO EXECUTE TERM SHEET, INCUR POST-PETITION, SECURED FINANCING, AND ACCORDING SUPER-PRIORITY ADMINISTRATIVE CLAIM STATUS**

This matter came before the Court on Tuesday, September 15, 2009 as a hearing on the motion ("Financing Motion") of Bender Shipbuilding & Repair Co., Inc. (the "Debtor") for entry of an interim and final order pursuant to Sections 105(a), 361, 362, 363, 364(c) & (d), 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), granting the Debtor authority and approval to execute the proposed Term Sheet (as defined herein) and authority to obtain post-petition, secured financing (the "Financing") on the terms and conditions set forth in that certain Term Sheet, a copy of which is attached to the Financing Motion as Exhibit "B" (the "Term Sheet") and as shall be further memorialized in a formal credit agreement providing for same between the Debtor, as Borrower, and Petrus Private Investments, L.P., as DIP Lender ("DIP Lender"), as may be amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof in a manner not materially inconsistent with this Interim Order (the "Financing Agreement"), together with all agreements, documents and instruments delivered in connection therewith (including, without limitation, the attendant

loan and security documents to be executed and delivered and which DIP Lender may require in connection with the Term Sheet and Financing Agreement in a form not materially inconsistent with this Interim Order, the "Financing Documents"); and notice of the Financing Motion and the hearing to consider the relief requested in the Financing Motion (the "Hearing") having been given to the Bankruptcy Administrator, counsel for the DIP Lender, counsel for the Official Committee of Unsecured Creditors (the "Committee"), and all parties appearing and requesting notice in the above-captioned proceeding, which constitutes due and sufficient notice as may be required by the Bankruptcy Code, the Bankruptcy Rules and the local rules of this Court under the particular circumstances; and the Court having conducted the Hearing with appearances as noted in the record; and upon the entire record of the Hearing, including any evidence presented by proffer, the statements of counsel at the Hearing and representation that after due deliberation thereon, the Debtor, Debtor's secured creditors, the Committee, and other represented parties have agreed to the terms of this Interim Order only with respect to the Initial Financing (as defined below); or, with respect to any secured creditors who may not have agreed to the terms of this Interim Order, the entry of this Interim Order is, in all respects, appropriate and necessary; and good and sufficient cause having been shown for the entry of this Interim Order; and because entry of this Interim Order is in the best interests of the Debtor, its creditors, and other parties-in-interest, after due deliberation:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[1]

**<u>Findings of Fact and Conclusions of Law</u>**

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

A.     On June 9, 2009 (the "Petition Date"), an involuntary Chapter 7 petition was filed against the Debtor.  An Order for Relief (Docket No. 61) was entered herein on July 1, 2009 ("Conversion Date") and the case was converted to a proceeding under Chapter 11 pursuant to an Order entered thereafter (Docket No. 66).

B.     Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of its assets and has continued the operation and management of its business in this case as a debtor-in-possession.

C.     This Court has jurisdiction over the case, these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D), (G), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and 1409.

D.     The Financing is necessary to allow the Debtor to obtain funds and financial accommodations required in order to pay the ongoing operating and administrative expenses of its business and the estate, as well as to preserve the value of the estate.

E.     The Debtor reasonably believes that the Financing will be sufficient to allow the Debtor to pay the ongoing operational and reorganization expenses of its estate that are necessarily incurred through and including October 30, 2009 (the "Subject Period").

F.     Given the Debtor's current financial condition and based upon the evidence presented, the Debtor is unable to obtain sufficient unsecured credit, allowable

3

under section 503(b) of the Bankruptcy Code as an administrative expense, to allow it to continue to operate and preserve the value of the Debtor's estate.

G.    Moreover, also given the Debtor's current financial condition and based on the evidence presented, the Debtor is unable to otherwise obtain credit or incur debt allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the Financing Agreement that is not secured by a senior, priming, and/or equal lien on property of the Debtor's estate that is already subject to a lien as well as super-priority claim status, under the terms and conditions set forth in this Interim Order and the Financing Documents.

H.    The Debtor's decision to seek and obtain secured, post-petition financing from the DIP Lender is the result of the exercise of its sound and reasonable business judgment by Mr. Thomas B. Bender, Jr., the President and Chief Executive Officer of the Debtor.

I.    The Financing has been negotiated by the Debtor and the DIP Lender at arms'-length and in good faith within the meaning of section 364(e) of the Bankruptcy Code, and any credit extended and loans made to the Debtor pursuant to the Financing shall be deemed to have been extended, issued, or made, as the case may be, in good faith by the DIP Lender as required by, and within the meaning of section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and should be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

4

J.       The terms and conditions of the Financing delineated in the Term Sheet and Financing Agreement are fair and reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.       Good cause exists for approval of the Financing Motion on an interim basis.  The Debtor's agreement to the Financing with the DIP Lender under the terms set forth in and the authorization given pursuant to this Interim Order will minimize disruption of the Debtor as a going concern and is in the best interests of the Debtor, its creditors, and its estate.  Debtor has been unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, or as an administrative expense under section 364(a) or (b) of the Bankruptcy Code.  Debtor has been unable to procure any alternative financing on terms comparable or superior to the Financing offered by the DIP Lender pursuant to the Financing Documents and this Interim Order represents the only financing that the Debtor was able to fully negotiate within the time constraints presented.

L.       This Court concludes that approval of the Financing and entry into the Term Sheet and Financing Agreement are in the best interests of the Debtor's estate and creditors, and implementation of the Financing will, among other things, provide the Debtor with the necessary liquidity to sustain the operation of the Debtor's business, preserve and maximize the value of the Debtor's estate for the benefit of all of the Debtor's creditors, and avoid immediate and irreparable harm to the

5

Debtor and its estate. Any objections to the Financing Motion with respect to the entry of this Interim Order and with respect to the Interim Financing (as defined below) have been settled as set forth in this Interim Order.

Based upon the foregoing findings and conclusions, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. **Findings of Fact and Conclusions of Law.** The findings of fact and conclusions of law set forth above are incorporated herein by this reference.

2. **Financing Motion Granted on Interim Basis.** The Financing Motion is **GRANTED** on an interim basis, subject to the terms and conditions set forth below:

3. **Reservation of Rights.** Notwithstanding any provision to the contrary in this Interim Order or in the Financing Documents, the Secured Creditors (as defined below), Maritrans (as defined below), and the Committee have reserved all of their rights and objections with respect to the Financing Motion, the Financing Documents, and the Financing pending a final hearing, except with respect to the Interim Financing (as defined below). The Debtor and the DIP Lender have acknowledged and agreed to such reservation of rights and objections as set forth in this Interim Order. Accordingly, each of the findings of fact, conclusions of law and other provisions of this Interim Order is subject to such reservation and shall be found only for the Interim Financing for the Interim Period. No preclusive effect shall be accorded to such findings of fact, conclusions of law or other provisions of this Interim Order, except with respect to the Interim

6

Financing, and nothing in this Interim Order (nor the fact of the approval of the Financing, the Term Sheet, and the Financing Documents the Interim Period pursuant to this Interim Order) shall create any presumption regarding the validity, appropriateness or approval of any terms of the Financing, the Term Sheet, and/or the Financing Documents on a final basis or otherwise alter any burdens of production or proof with respect thereto.

4.  **Approval of Term Sheet.**  The terms and conditions articulated in the Term Sheet are hereby approved on an interim basis.

5.  **Authorizations.**  The Debtor is authorized to (a)execute the Term Sheet; (b) obtain credit and borrow from the DIP Lender, in accordance with the terms of this Interim Order and the Term Sheet, in the aggregate amount of up to $1,500,000.00 (the "Interim Financing") in the period prior to the Final Hearing ("Interim Period"); (c) execute and deliver a debtor-in-possession term loan Financing Agreement in substantially the form attached hereto and not materially inconsistent with the terms of this Interim Order as well as all ancillary Financing Documents in connection therewith necessary or reasonably appropriate to effectuate the terms and conditions of this Interim Order; (d) perform and do all acts that are required or contemplated by or in connection with this Interim Order, the Term Sheet, and the Financing Documents;  and (e) comply with and perform all of the terms and conditions of this Interim Order, the Term Sheet, the Financing Agreement, Financing Documents, and any other documents, instruments and agreements necessary to effectuate the terms and conditions of

7

this Interim Order, and the Debtor on behalf of the estate is authorized to repay to the DIP Lender amounts borrowed with interest, plus all other costs, fees, expenses, charges, and claims, in accordance with and subject to the terms and conditions set forth in the Term Sheet, the Financing Agreement, any other Financing Documents, and this Interim Order.

6. **Financing Obligations Valid, Binding and Enforceable.** All obligations that the Debtor owes to the DIP Lender under the Term Sheet, Financing Documents, and this Interim Order (collectively, the "Financing Obligations") shall constitute obligations that are valid, binding, and enforceable against the Debtor and its estate in accordance with their terms.

7. **Limitation on Other Claims and Liens.** Other than as expressly described in this Interim Order or in the Term Sheet, no other claim or lien having a priority superior to or *pari passu* with any of the Financing Obligations shall be granted while any of the Financing Obligations remain outstanding without the advance express written consent of the DIP Lender and approval by this Court upon filing of an appropriate application with proper notice.

8. **Super-Priority Claims.** Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Financing Obligations shall at all times be senior to the rights of the Debtor and all creditors in this bankruptcy case (or in any subsequent proceedings under the Bankruptcy Code) and shall constitute allowed claims having priority over all valid claims, administrative expenses, adequate protection claims, and all other valid claims against the Debtor, now existing or hereafter arising, of any

8

kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 502, 503(b), 506(c), 507(a), 507(b), 546(c), 726, and 1129(a)(9) of the Bankruptcy Code (the "Super-Priority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Super-priority Claims shall be payable from and have recourse to all prepetition and post-petition property of the Debtor and all proceeds thereof in accordance with the provisions of this Interim Order, and subject and subordinate only to the Carve-Outs and Limitations on Liens (as defined paragraph 21 below) and the provisions of paragraph 19 of this Interim Order.   Notwithstanding anything to the contrary contained in the Financing Documents or this Interim Order, such Super-Priority Claim shall be subject and subordinate to (a) the liens and security interests of Maritrans Operating Company, L.P. ("Maritrans"), and all products and proceeds thereof, securing the obligations arising with respect to that certain Term Loan Note, dated March 13, 2009, executed by the Debtor (and a non-debtor affiliate) in favor or Maritrans including, without limitation, the liens and security interests (and all products and proceeds thereof) arising under and/or evidenced by (i) that certain Mortgage dated March 13, 2009 and pursuant to those Mortgages dated May 9, 1996 and December 31, 2004 assigned to Maritrans  by Marquette Commercial Finance, Inc. as of March 13, 2009 and as further amended and restated pursuant to that certain Second Amended and Restated Mortgage dated April 15, 2009 and (ii) the UCC Financing Statements

9

recorded on March 17, 2009 with the Judge Probate of Mobile County, Alabama, at Instrument Numbers 2009016552 and 2009016554 (all such liens and security interests together with all products and proceeds thereof, collectively, the "Maritrans Liens"), and (b) the security interests of Marquette Business Credit, Inc. as the same may apply solely to Hull Nos. 8184, 8188, and 8192 and the equipment, machinery, and items and materials associated therewith (collectively the "Gulfmark Contract Inventory"), without prejudice and subject to determination by this Court of the issues and claims presented by Gulfmark Offshore, Inc. in Adversary Proceeding No. 09-01094 (Docket No. 356), which issues and claims the Debtor denies and disputes.

9. **Collateral for Financing Obligations.** Except as otherwise expressly set forth herein, to secure the prompt payment and performance of any and all post-petition obligations of the Debtor to the DIP Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and hereby is granted liens and security interests, pursuant to sections 364(c)(2), (c)(3) & (d)(1) of the Bankruptcy Code (effective upon the date of the receipt of the Interim Financing and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements, or otherwise) constituting valid, enforceable, and perfected first priority priming liens on, and security interests in (collectively "DIP Liens"), any and all of the Debtor's assets, property or interests in property (whether tangible, intangible, corporeal, incorporeal, real, personal, immovable, movable

10

and/or mixed), whether pre-petition, post-petition, now owned or existing or hereafter acquired, arising or created, all other actions or claims of Debtor against any person or entity (collectively, the "DIP Collateral"); provided, however, that the DIP Liens shall be subject and subordinate in all respects only to the Maritrans Liens over the collateral securing same, the Carve-Outs and Limitations on Liens set forth in paragraph 21 of this Interim Order. Additionally, the DIP Lender shall receive and the Debtor shall make a pledge of all of the Debtor's shares or equity interests in Debtor's majority and wholly-owned subsidiaries and a collateral assignment of all material leases, contracts, licenses, and permits of the Debtor, subject to the terms thereof. Although the proceeds of the sale of any property of the Debtor subject to the pre-petition security interests of Marquette Business Credit, Inc., other than the pre-petition security interests in the Gulfmark Contract Inventory, shall be subject to the DIP Liens and the liens of Marquette Business Credit, Inc., subject to the terms of this Interim Order, such proceeds shall be maintained in the Marquette Account as defined in the successive Cash Collateral Orders previously entered by the Court and maintained there until further order of the Court.

10. **Adequate Protection Replacement Liens for Certain Secured Creditors.** As adequate protection for any diminution and solely to the extent of any diminution resulting from the DIP Liens granted herein to the DIP Lender, in the value of the interests of Marquette Business Credit, Inc., General Electric Capital Corporation, GE Business Financial Services, Inc., The Prudential Insurance Company of

11

America, and/or Regions Bank (collectively "Secured Lenders") in any property of the Debtor subject to a security interest in favor of any the Secured Lenders, this Court grants the Secured Lenders, effective on and after the entry of this Interim Order, valid and automatically perfected replacement liens and security interests junior to the DIP Liens and all existing liens and security interests (including without limitation, the Maritrans Liens) (subject to the Carve-Outs and Limitations on Liens in paragraph 21 below and in this paragraph and subordinate to the DIP Liens) in and upon all of the properties and assets of the Debtor, real or personal (except for and excluding claims and recoveries under Sections 542 through 553 of the Bankruptcy Code), including, but not limited to, insurance proceeds, insurance premium refunds, security deposits, utility deposits, claims, causes of action (whether under contract or in tort) bonds and proceeds of same, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of the Debtor against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements therefore, and wherever located and all assets acquired by the Debtor post-petition. Nothing contained in the Financing Documents or this Interim Order shall prohibit the Secured Lenders or Maritrans from seeking, or otherwise constitute a waiver of the Secured Lenders' or Maritrans' rights to seek, adequate protection or any other relief with respect to the Maritrans Liens.

12

11. **Release of Claim for Avoidance.** Subject to the reservation below, the Debtor shall be deemed to have released any potential claim against General Electric Capital Corporation and/or GE Business Financial Services, Inc. (collectively "GE") under section 547 arising from the pre-petition cross-collateralization of each of such entity's pre-petition loans to the Debtor as was contemplated in the pre-petition Forbearance Agreement dated March 31, 2009 between GE, the Debtor, and certain other persons, provided, however, that such waiver shall be limited in amount to the actual amount of Financing under this Interim Order, which shall not exceed $1,500,000.00 and shall be null and void in the event that GE asserts at the Final Hearing that the value of the claim of GE exceeds the value of the assets subject to the security interests of GE. Subject to this limitation, this waiver shall be binding upon all parties in interest in this case or any subsequently filed Chapter 7 bankruptcy case or any Chapter 11 or Chapter 7 trustee that may be appointed or elected in this case, the Committee, and any successor to the interests of the Debtor.

12. **Good Faith.** Not withstanding anything contained herein, all credit extended and loans made to the Debtor by the DIP Lender in connection with the Financing approved pursuant to this Interim Order shall be and hereby are deemed to have been extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and are hereby entitled to the full protection of section 364(e) of the Bankruptcy

13

Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

13. **Waiver of Discharge.** The Financing Obligations shall not be discharged by the entry of an order confirming a plan of reorganization or liquidation in this bankruptcy case and, pursuant to Bankruptcy Code § 1141(d)(4), the Debtor has irrevocably and absolutely waived such discharge.

14. **Modification of the Automatic Stay.** After giving the Debtor written notice of the existence of an Event of Default (as defined in the Financing Documents , and including, but not limited to, those arising under this Interim Order and the Term Sheet), the DIP Lender may take all or any of the following actions without further modification of the automatic stay pursuant to sections 362 of the Bankruptcy Code (which is hereby deemed modified and vacated to the limited extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of or application to this Court: (a) terminate the credit commitments or any and all obligations to make post-petition loans to the Debtor under the Financing; (b) declare the principal of and accrued interest, fees, and other liabilities constituting the Financing Obligations to be due and payable; and (c) resort to such other and further remedies to which it is entitled pursuant to the Financing Documents.  Notwithstanding the preceding clause (c), the DIP Lender shall provide no less than five (5) business days' notice of the Event of Default to the Secured Lenders and the persons identified in paragraph 32 below (Notices) before resorting to any remedies (other than those identified in clauses

14

(a) and (b)  of this paragraph) to which it is entitled pursuant to the Financing Documents.

15.     **Effect of Closing Date.**  Effective on the Closing Date and funding to the Debtor of the $1,500,000 authorized by this Interim Order, the Debtor is hereby deemed to have waived the right of the estate to challenge the validity and enforceability of the Financing Obligations authorized under this Interim Order.  On the Closing Date, the releases granted by the Debtor, as set forth in the Term Sheet, shall be deemed effective without any further action or order of this Court.

16.     **Inconsistencies.**  In the event of any inconsistency between the provisions of this Interim Order and the provisions of the Term Sheet and any documents and instruments executed in connection therewith, including the Financing Agreement, the provisions of this Interim Order shall govern.  The Debtor and the DIP Lender hereby are authorized to make any nonmaterial amendments, modifications, or waivers to the Term Sheet and the Financing Documents without notice or further order of the Court and are authorized to execute any additional agreements necessary to document such amendments, modification, or waivers.

17.     **No Effect on Other Rights of The DIP Lender.**  This Interim Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict, or nullify any rights of the DIP Lender with respect to any person or entity other than the Debtor, nor to release, alter, impair, affect, or abrogate any debts, claims, demand, actions, and causes of action in law and equity, whether known or

15

unknown, that the DIP Lender may have as to any person or entity other than the Debtor.

18. **No Effect on Assets or Obligations of Non-Debtors or Rights of Third Parties Against Non-Debtors.** Except as specifically set forth herein, this Interim Order shall not have any effect upon any assets or rights, remedies, or interests of non-debtor parties with respect to any non-debtor affiliates of the Debtor or in property of any kind not constituting property of the estate.

19. **Events of Default and Priorities for Enforcement of DIP Lender's Remedies.**

In addition to the Events of Default in the Term Sheet or Financing Agreement, as long as any portion of the Financing Obligations remains unpaid, the Debtor shall not seek, and it shall constitute an Event of Default, if the Debtor seeks, or if there is entered, an order (i) dismissing this Chapter 11 Case; (ii) converting the Case from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; or (iii) appointing a bankruptcy trustee or examiner pursuant to section 1104 of the Bankruptcy Code. It shall further be an Event of Default in the event that the Debtor, without the advance written consent of the DIP Lender and authorization of this Court, uses any portion of the proceeds of Financing ("Financing Proceeds") for unauthorized purposes, or if, with respect to any Quarterly Budget (as defined herein below), the Borrowers under the Financing Agreement expend, in the aggregate, in excess of fifteen percent (15%) above the total amount budgeted for such period in the corresponding Quarterly Budget. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by

16

any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and whether the DIP Lender has exercised its rights and remedies in accordance with this Interim Order, the Financing Documents, and/or applicable law. The Debtor hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this Interim Order or the Financing Documents. Except as provided in this Interim Order, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The DIP Lender's delay or failure to exercise rights and remedies under the Financing Documents or this Interim Order shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement. Upon the Event of Default, the DIP Lender shall enforce its remedies only in the following order of priorities:

a. First, against any property of the Debtor that was unencumbered as of the Petition Date, including, but not limited to, the stock of the Mexican Subsidiaries (as that term is defined in the Term Sheet and Financing Agreement), the real property located at 300 Royal Street, Mobile, Alabama, and the cash surrender value of life insurance policies for Thomas B. Bender, Jr., in an amount sufficient to pay the outstanding Financing Obligations in full. If such proceeds realized by the DIP

17

Lender in connection with such sales, dispositions or other realization, including all expenses, liabilities and advances incurred or made by the DIP Lender in connection therewith, including reasonable attorneys' fees and expenses, are insufficient to satisfy the outstanding Financing Obligations, then:

b.  Second, against the property of the Debtor in which Marquette Business Credit, Inc. (except as provided in the Limitations on Liens in paragraph 21 herein) holds any security interest, in an amount sufficient to pay the outstanding Financing Obligations in full.  If such proceeds realized by the DIP Lender in connection with such sales, dispositions or other realization, including all expenses, liabilities and advances incurred or made by the DIP Lender in connection therewith, including reasonable attorneys' fees and expenses, are insufficient to satisfy the outstanding Financing Obligations, then:

c.  Third, against the property of the Debtor in which General Electric Capital Corporation (including GE Business Financial Services, Inc.) holds any security interest, in an amount sufficient to pay the outstanding Financing Obligations in full.  If such proceeds realized by the DIP Lender in connection with such sales, dispositions or other realization, including all expenses, liabilities and advances incurred or made by the DIP Lender in connection therewith, including reasonable attorneys' fees and expenses, are insufficient to satisfy the outstanding Financing Obligations, then:

18

d.   Fourth, against the property of the Debtor in which The Prudential Insurance Company of America holds any security interest, in an amount sufficient to pay the outstanding Financing Obligations in full.  If such proceeds realized by the DIP Lender in connection with such sales, dispositions or other realization, including all expenses, liabilities and advances incurred or made by the DIP Lender in connection therewith, including reasonable attorneys' fees and expenses, are insufficient to satisfy the outstanding Financing Obligations, then:

e.   Fifth, against the property of the Debtor in which Regions Bank holds any security interest (except as provided in the Limitations on Liens in paragraph 21 herein), in an amount sufficient to pay the outstanding Financing Obligations in full. If such proceeds realized by the DIP Lender in connection with such sales, dispositions or other realization, including all expenses, liabilities and advances incurred or made by the DIP Lender in connection therewith, including reasonable attorneys' fees and expenses, are insufficient to satisfy the outstanding Financing Obligations, then:

f.   Sixth, against the property of the Debtor in which Caterpillar Financial Services Corporation holds any security interest, in an amount sufficient to pay the outstanding Financing Obligations in full.

Notwithstanding anything to the contrary contained in the Financing Documents or this Interim Order, with respect to the collateral that is the subject of the

19

Secured Lenders' or Maritrans Liens (collectively the "Secured Lender and Maritrans Collateral"), and notwithstanding the grant to the DIP Lender of a junior and subordinate lien on the property described in the Limitations on Liens (paragraph 21 below) pursuant to this Interim Order, the Secured Lenders and Maritrans shall have the sole and exclusive right to exercise rights and remedies with respect to their respective collateral. In no event shall the DIP Lender possess the right to exercise rights and remedies under this Interim Order, the Financing Documents, or applicable law with respect to the Secured Lenders and Maritrans Collateral.

20. **Carve-Outs.** Notwithstanding any provision in this Interim Order to the contrary, the DIP Liens granted pursuant to this Interim Order shall be subject and subordinate to a carve-out (the "Carve-Outs") for: (a) the fees of the Bankruptcy Administrator; (b) the fees and expenses of Bankruptcy Court-approved professionals for the Debtor and the Committee which are allowed by the Bankruptcy Court pursuant to Bankruptcy Code §§ 330 or 331.

21. **Limitations on Liens.** Notwithstanding any other provision of this Interim Order to the contrary, the liens and other interests granted or otherwise created in the assets of the Debtor hereunder shall be subject and subordinate to: (a) the Maritrans Liens; (b) provided that any draws have been paid under that certain Irrevocable Standby Letter of Credit No. 55102293 in the face amount of Five Million and No/100 Dollars ($5,000,000.00) dated March 14, 2008 (the "Letter of Credit") by Regions Bank in favor of Seacor Marine, LLC pursuant to that certain

20

June 22, 2009 presentment by Seacor Marine, LLC for payment of the Letter of Credit, or any subsequent presentments or drawings, the mortgage liens, and security interests in certain real estate, fixtures, leases, and rents and related collateral granted by the Debtor in favor of Regions Bank pursuant to that certain Mortgage executed by Debtor in favor of Regions Bank dated September 29, 2008 and securing that certain revolving loan in the original principal amount of $8,838,000.00 and filed for record in Real Property Book 6445, Page 454, in the Probate Office of Mobil County, Alabama; and (c) the the security interests of Marquette Business Credit, Inc., in Gulfmark Contract Inventory, without prejudice and subject to determination by this Court of the issues and claims presented by Gulfmark Offshore, Inc. in Adversary Proceeding No. 09-01094 (Docket No. 356), which issues and claims the Debtor denies and disputes.

22. **Limitations on Use of Financing Proceeds.**  The proceeds of the Financing shall be subject to the following limitations:

a.      Subject to the terms of this Interim Order and the Financing Documents, the Debtor and only the Debtor shall be entitled to use the proceeds of the Financing.

b.      Within five (5) business days of the date of entry of this Interim Order, the Debtor shall file with the Court and serve upon the Bankruptcy Administrator, Committee, all parties who have filed objections or reservations of rights to the Motion and all other parties requesting service of notices in the case, a year-end budget of the projected consolidated cash flows of the Debtor ending December

21

31, 2009 (the "Q4 2009 Quarterly Budget"), agreed to by the Debtor and DIP Lender ; furthermore, at least thirty (30) days prior to the first day of each subsequent calendar quarter (beginning with the first quarter of 2010), Debtor shall deliver to the DIP Lender  a quarterly calendar budget (each of which, together with the Q4 2009 Quarterly Budget, is individually, a "Quarterly Budget", and collectively, the "Quarterly Budgets") of the projected consolidated cash flows of Borrowers taken, as a whole, for such calendar quarter.  Beginning for the week ending October 2, 2009, with respect to each calendar week, the Debtor shall deliver to the DIP Lender as soon as available, but in any event by the Wednesday of the following week, an updated thirteen (13) week cash flow projection ("13 Week Cash Flow Projection") of the Borrowers under the Financing Agreement,  (in form and detail reasonably satisfactory to DIP Lender, reflecting on a line-item basis, among other things, anticipated sales, cash receipts, inventory levels, and expenditures for the subject period and (2) at least thirty (30) days prior to the first day of each calendar quarter (beginning with the first quarter of 2010), Debtor shall deliver to Lender a quarterly calendar budget (the "Quarterly Budget") of the projected consolidated cash flows of Borrowers taken, as a whole, for such calendar quarter.  Marquette Business Credit, Inc., shall continue to receive the same information and have the same access to the Debtor's books and records as it has received under the successive Cash Collateral Orders entered by the Court.

c.      Unless otherwise expressly agreed to in writing by the DIP Lender and approved by the Court, the proceeds of the Financing shall be used exclusively for the purposes identified in the Term Sheet and Financing Agreement and pursuant to the Budgets and other terms referenced therein, and in no event may such proceeds be used for professional fees and expenses incurred for any litigation or threatened litigation against the DIP Lender or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the DIP Lender.

d.      The Financing Proceeds shall be deposited into the Cash Collateral Account (as defined in the Financing Documents) and the Cash Collateral Account shall be maintained with an approved banking institution subject to the reporting and other requirements established by this Court and the Bankruptcy Administrator with regards to other debtor-in-possession accounts.

e.      Upon receipt of the Financing Proceeds, the Debtor is hereby authorized to pay to Global Hunter Securities, LLC any fee due pursuant to Section 5(b) of the Engagement Letter with the Debtor dated August 10, 2009.

f.      Upon receipt of the Financing Proceeds, the Debtor is hereby authorized to reimburse Thomas B. Bender, Jr. up to $50,000.00 for funds actually advanced by Thomas B. Bender, Jr. on behalf of the Debtor and in payment of the expenses of the DIP Lender in connection with the Financing.

g.      Notwithstanding DIP Liens granted to the DIP Lender, or adequate protection replacement liens granted to the Secured Lenders, in and on tax

23

Case 09-12616    Doc 392    Filed 09/22/09    Entered 09/22/09 08:52:20    Desc Main
Document        Page 23 of 32

refunds payable to the Debtor for past tax years, the Debtor is authorized to use the proceeds from such tax return collateral including, but not limited to, for years 2002, 2003, 2004, 2005, and 2006, except to the extent otherwise expressly limited by the provisions of this Interim Order.

23. **Dismissal, Conversion, Etc. of Bankruptcy Case.** If an order dismissing this case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (a) until the Financing Obligations shall have been paid and satisfied in full, the Super-Priority Claims and the DIP Liens granted pursuant to this Interim Order to the DIP Lender, as the case may be, shall continue in full force and effect and shall remain binding on all parties-in-interest notwithstanding such dismissal and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the limited purpose of enforcing such Super-Priority Claims and DIP Liens. In the event that the case is dismissed, converted, otherwise superseded, or substantively consolidated, neither the entry of this Interim Order nor the dismissal, conversion, superseding, or substantive consolidation of the case shall affect the rights of the DIP Lender under the Term Sheet, Financing Agreement, or the terms and conditions of this Interim Order, including the liens granted herein, and all the rights and remedies thereunder shall be and remain in full force and effect as if the case had not been dismissed, converted, superseded or substantively consolidated.

24

24. **Effect of Future Modification of Order.** If any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed, such stay, modification, or vacation shall not affect: (a) the validity of any of the Financing Obligations incurred by the Debtor's estate prior to the DIP Lender's receipt of written notice of the effective date of such stay, modification, or vacation; (b) the validity, priority, or enforceability of the super-priority claims and liens granted hereby; or (c) the Limitations on Liens as defined in paragraph 21. Notwithstanding any such stay, modification, or vacation, any of the Financing Obligations incurred by the Debtor's estates prior to the DIP Lender's receipt of written notice of the effective date of such stay, modification, or vacation shall be governed in all respects by the original provisions of this Interim Order and the Term Sheet and Financing Agreement, and the DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits granted by this Interim Order and the Term Sheet and Financing Agreement with respect to all such Financing Obligations. Additionally, and without limitation, in the event this Interim Order is stayed, vacated, reversed, or modified on appeal, then upon such an event, an event of default under the Term Sheet shall have occurred, and the DIP Lender's obligations thereunder and hereunder, at DIP Lender's sole discretion, shall cease.

25. **Perfection Without Filing.** All agreements, security interests, mortgages, deeds of trust, and liens contemplated or granted by this Interim Order and the Order, including the DIP Liens (collectively, the "Liens"), shall constitute valid and duly perfected security interests and liens, and the DIP Lender shall not be required to

file or serve financing statements, notices of lien, or similar instruments that otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect the Liens; and the failure by the Debtor to execute any documentation relating to the Liens shall in no way affect the validity, perfection, or priority of such Liens. If, however, the DIP Lender, in its sole discretion, shall decide to file any such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or to otherwise confirm perfection of such Liens, the Debtor shall reasonably cooperate with and assist in such process, and the stay imposed by section 362(a) of the Bankruptcy Code is hereby lifted to the limited extent necessary to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Interim Order. Any and all filings of financing statements, mortgages, deeds of trust, notices of lien, or similar instruments shall be exempt from tax liability with respect to the conveyance and the securing of the Financing Obligations herein and the recordation hereof.

26. **Binding Effect.**  The terms and conditions of this Interim Order, the Term Sheet, and the Financing Agreement shall be binding upon the Debtor (including any Chapter 11 or Chapter 7 Trustee hereinafter appointed for the Debtor's estate to the extent allowed under applicable law), all creditors, shareholders, and parties-in-interest to the case, and all successors in interest and assigns thereof, and shall

26

inure to the benefit of the Debtor's estate and the DIP Lender. No obligation, payment, transfer or grant of security under the Financing Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim. The provisions of this Interim Order, the Term Sheet, and the Financing Agreement shall survive entry of any order that may be entered converting or dismissing the Case, and the claims and liens granted herein shall maintain their priority and validity against the Debtor and its estate as provided herein. This binding effect is an integral part of the agreement included in this Interim Order, the Term Sheet, and the Financing Agreement.

27. **<u>Exculpation From Liability.</u>** Nothing in this Interim Order, the Financing Documents, or any other documents related to the Financing shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from the prepetition or post-petition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts. So long as the DIP Lender complies with its obligations under the Financing Documents and under applicable law, if any (including the Bankruptcy Code): (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral; (ii) any loss or

27

damage thereto occurring or arising in any manner or fashion from any cause; (iii) any diminution in the value thereof; or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person; and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtor. In determining to make any advance under the Financing Agreement, performing its obligations under the Financing Documents or under applicable law (if any), or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the Financing Documents, the DIP Lender shall not (a) be deemed to be in "control" of the operations of the Debtor, (b) owe any fiduciary duty to the Debtor, its creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability act of 1980 or any similar federal or state statute).

28. **No Surcharge.**  Notwithstanding anything to the contrary contained herein, except to the extent of the Carve Out: (a) no costs or expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Lender or DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender; (b) no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender; and (c)

28

nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

29. **Insurance.** The Debtor shall maintain and pay for insurance on all DIP Collateral, wherever located, covering casualty, hazard, public liability, and such other risks in such amounts and with such insurance companies as are reasonably satisfactory to the DIP Lender (it being understood that wind storm coverage shall not be required unless specifically requested in writing by the DIP Lender and funded by an increase in the Commitments at the request of the DIP Lender). All proceeds payable under each such policy shall be payable to the DIP Lender for application to the Financing Obligations, except insurance proceeds applicable to any (a) collateral of Marquette Business Credit, Inc., including the insurance proceeds applicable to the Seacor vessel, which said proceeds will be deposited in the Marquette Account, and (b) the Maritrans Collateral, which proceeds shall be paid first to Maritrans. At DIP Lender's request, the Debtor shall deliver the originals or certified copies of such policies to the DIP Lender with loss payable endorsements reasonably satisfactory to the DIP Lender, naming the DIP Lender as loss payee or additional insured, as appropriate; provided, however, that Marquette Business Credit, Inc., will continue to be named as loss payee on insurance proceeds applicable to its collateral.

30. **Taxes.** The Debtor shall pay all post-petition state and federal tax liabilities and file all required state and federal returns as they come due.

29

31.     **Extension and Termination of Cash Collateral Order.**  Pursuant to the agreement of the Debtor and Marquette Business Credit, Inc., the authority to use the cash collateral of Marquette Business Credit, Inc. granted pursuant to the Order Granting Continued Temporary Use of Cash Collateral and Providing Adequate Protection entered herein on August 28, 2008 ("Cash Collateral Order") (Docket No. 313) shall terminate upon the receipt by the Debtor of the Financing Proceeds.  However, if the Financing Proceeds are not received by the Debtor on or before September 25, 2009, the authority granted by the Cash Collateral Order shall be extended up to and including September 28, 2009 without need of any further hearing or entry of any further order by this Court.  Nothing herein shall prejudice the rights of the Debtor to file a motion to seek an extension of the authority granted by the Cash Collateral Order or the rights of Marquette Business Credit, Inc. to oppose such an extension of authority.

32.     **Notices.**  Any notice which may be required to be given under this Interim Order, shall be sufficient if notice is given by facsimile transmission, hand delivery, or regular, certified or registered United States mail to:

If to Debtor:

        Stewart F. Peck
        Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
        601 Poydras Street, Suite 2775
        New Orleans, Louisiana 70130
        Telephone:    504-568-1990
        Facsimile:    504-310-9195
        Email:        speck@lawla.com

With a copy to:
Counsel for the Official Committee of Unsecured Creditors
Craig A. Wolfe
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Telephone: 212-808-5073
Facsimile: 212-808-7897
Email: cwolfe@kelleydrye.com

If to the DIP Lender:

Russell L. Munsch
Allen J. Dickey
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: 214-855-7562
Facsimile: 214-978-4320
Email: adickey@munsch.com

33. **Effectiveness of Interim Order.** This Interim Order shall be effective immediately upon entry by the Court, without the need to wait for any period of time as set forth in the Bankruptcy Code or the Bankruptcy Rules.

34. **Objections to Interim Order and Final Hearing.** Pursuant to Bankruptcy Rule 4001(d)(2), any objection to the entry of a final Order regarding the Financing Motion must be filed on or before 5:00 p.m. Central Time on October 6, 2009 (the "Objection Date"). A final hearing on the Financing Motion shall take place on October 13,, 2009, at 8:30 a.m. (the "Final Hearing"). Any objection shall be in writing and shall be filed with the Clerk of the Bankruptcy Court on or before the Objection Date, with a copy served upon:

31

Counsel to Debtor:

     Stewart F. Peck
     Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
     601 Poydras Street, Suite 2775
     New Orleans, Louisiana 70130
     Telephone:    504-568-1990
     Telecopier:    504-310-9195
     Email:        speck@lawla.com

Counsel to the DIP Lender:

     Russell L. Munsch
     Allen J. Dickey
     Munsch Hardt Kopf & Harr, P.C.
     3800 Lincoln Plaza
     500 N. Akard Street
     Dallas, Texas 75201-6659
     Telephone:    214-855-7562
     Facsimile:    214-978-4320
     Email:       adickey@munsch.com


Dated:   September 22, 2009



                    _Margaret A. Mahoney_
                    MARGARET A. MAHONEY
                    U.S.  BANKRUPTCY JUDGE