**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ALABAMA**

IN RE:

                            Case No. 09-12616-MAM

BENDER SHIPBUILDING &
REPAIR CO., INC.

DEBTOR

**ORDER (A) APPROVING BIDDING PROCEDURES FOR SUBMISSION
AND ACCEPTANCE OF COMPETING BIDS, AND UNDER
CERTAIN CIRCUMSTANCES, PAYMENT OF A BREAK-UP FEE
TO VISION TECHNOLOGIES MARINE, INC.; (B) SCHEDULING BIDDING
DEADLINE, AUCTION DATE
AND SALE HEARING DATE; (C) ESTABLISHING
PROCEDURE FOR DETERMINING CURE AMOUNTS; AND (D)
FIXING NOTICE PROCEDURES AND APPROVING FORM OF NOTICE**

      This matter is before the Court on the motion of Bender Shipbuilding & Repair Co., Inc., as Debtor and Debtor-in-Possession (the "*Debtor*"), dated December 15, 2009 (the "*Motion*"), for, inter alia, entry of an order (i) approving the proposed bidding procedures annexed hereto as Exhibit A for submission and acceptance of competing bids (the "*Bidding Procedures*") for the sale and, as applicable, the assumption and assignment, of certain assets of the Debtor and, under certain circumstances, payment of a break-up fee in the amount of $800,000 (the "*Break-Up Fee*") to Vision Technologies Marine, Inc., (collectively with its successors and assigns, "*VTM*" or the "*Stalking Horse*"); (ii) scheduling a bidding deadline, an auction date, and a sale hearing date; (iii) establishing procedures for determining cure amounts relating to the assumption and assignment of certain executory contracts and unexpired leases (such amounts, the "*Cure Amounts*"); and (iv) fixing notice procedures and approving forms of notice; and the Court having reviewed the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§1408 and 1409; and it appearing that notice of the Motion was good and sufficient under the circumstances and that no other or further notice need be given; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court held on December 29, 2009 (the "*Hearing*"); and it appearing that entry of this order is in the best interests of the Debtor, its estate, it creditors and all parties in interest; and upon the Motion and the record of the Hearing and all other proceedings had before the Court; and after due deliberation and good cause appearing therefor, it is hereby

                        FOUND AND DETERMINED THAT:[1]

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. To the extent of any inconsistency between the terms of the bidding procedures attached to the executed Purchase Agreement and the terms of the

A.  The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the bidding process (the "*Bidding Procedure Relief*"), including the Court's (i) approval of the Bidding Procedures, (ii) approval of payment of the Break-Up Fee as superpriority administrative expenses in accordance with the terms of that certain amended and restated asset purchase agreement, attached hereto (without exhibits and other attachments) as Exhibit B (together with all exhibits and agreements attached to the Original Agreement, the "*Purchase Agreement*")[2] annexed hereto as Exhibit B, (iii) determination of the procedures for determining the final Cure Amounts in the manner described herein, and (iv) approval of the adequacy of, and authorization to serve, the sale notice (the "*Sale Notice*").

B.  The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court scheduling a subsequent hearing (the "*Sale Hearing*") to consider whether to grant the remainder of the relief requested in the Motion, including the approval of the sale of certain assets (the "*Purchased Assets*") of the Debtor in accordance with either (i) the Purchase Agreement, by and between the Debtor and Stalking Horse (the "*Transaction*") or (ii) such other agreement from a Prevailing Bidder other than Stalking Horse, if applicable (a "*Competing Transaction*"), and free and clear of all Liens, Environmental Liabilities, Liabilities and Obligations, Welfare Benefits, claims, interests and encumbrances whatsoever (the "*Interests*"), except as expressly provided in the Purchase Agreement, with the same to attach to the proceeds therefrom (the "*Sale Proceeds*"), pursuant to Section 363 of title 11, United States Code (the "*Bankruptcy Code*").

C.  The Break-Up Fee to be paid under the circumstances, as set forth in the Purchase Agreement, are (1) actual and necessary costs and expenses of preserving the Debtor's estate within the meaning of Section 503(b) of the Bankruptcy Code, (2) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Stalking Horse, (3) reasonable and appropriate, in light of the size and nature of the proposed Transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse, and (4) necessary to induce the Stalking Horse to continue to pursue the Transaction and to continue to be bound by the Purchase Agreement.

D.  Moreover, the estate's authorization to pay the Break-Up Fee is an essential inducement and condition relating to the Stalking Horse's entry into, and continuing obligations under, the Purchase Agreement. Unless the Stalking Horse is assured that the Break-Up Fee will be paid pursuant to the circumstances described in the Purchase Agreement, the Stalking Horse is unwilling to remain obligated to purchase the Purchased Assets or be otherwise bound under the Purchase Agreement (including the obligation to remain committed to its offer while such offer is subjected to higher or otherwise better offers, as contemplated by the Bidding Procedures). The Debtor's

---

bidding procedures attached to this Order and/or the Motion, the terms of the bidding procedures attached to this Order shall in all respects control.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement, unless otherwise indicated herein.

2

promise to pay, subject to court approval, the Break-Up Fee has induced the Stalking Horse to submit a bid that will serve as a minimum or floor bid on which the Debtor, its creditors, and other bidders can rely. The Stalking Horse has provided a material benefit to the Debtor and its creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be received. Accordingly, the Bidding Procedures and the Break-Up Fee are reasonable and appropriate, and represent the best method for maximizing value for the benefit of the Debtor's estate.

E. The Purchase Agreement and its terms were negotiated by the Debtor and the Stalking Horse in good faith and in an arm's-length manner.

F. All other objections have been resolved or overruled at the Hearing for the purposes of this Order, with the exception of the objections raised by the United States of America, which are preserved and reserved until the Sale Hearing.

NOW THEREFORE, AND BASED ON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW SET FORTH ON THE RECORD AT THE HEARING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

6. The Bidding Procedure Relief sought in the Motion, as modified on the record of the Hearing and by this Order, is GRANTED.

7. The Bidding Procedures, which are incorporated herein by reference, are hereby approved and shall govern all bids and bid proceedings relating to the sale of the Purchased Assets. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

8. Payment of the Break-Up Fee under the circumstances set forth and in accordance with the terms of the Purchase Agreement is hereby approved. If the Purchase Agreement is terminated under such circumstances that payment of the Break-Up Fee is triggered under the terms thereof, such payments shall be made in accordance with the terms of the Purchase Agreement. If the payment of the Break-Up Fee is triggered by the sale of the Purchased Assets to a Prevailing Bidder other than the Stalking Horse for cash, the Break-Up Fee shall be paid out of the purchase price for such Purchased Assets at the closing of such transaction. In the event the Purchased Assets are not sold pursuant to the Bidding Procedures and the Break Up Fee becomes payable because the Debtor subsequently liquidates or otherwise disposes of a material portion of the Purchased Assets (other than via credit bidding) in one or a series of transactions consummated with a single acquirer or group of affiliated acquirers on or before September 14, 2010, the Debtor shall be permitted and authorized to pay the Break-Up Fee to VTM from the funds acquired from such sale or sales.

9. The deadline for submitting a Qualified Bid shall be **January 14, 2010, at noon (Central Time)**. In order to be a Qualified Bid, such bid must conform to the requirements set forth in the Bidding Procedures.

10. As set forth in the Bidding Procedures, a Qualified Bid shall not consist of a credit bid by any creditor pursuant to Section 363 of the Bankruptcy Code. For the avoidance of doubt, however, credit bidding shall be permitted as set forth in the Bidding Procedures attached hereto as Exhibit A hereto.

11. The Sale Notice and the cure notice sent to the non-Debtor parties to the Assigned Contracts ("*Cure Notice*") shall be served at least twenty (20) days prior to the Sale Hearing. Objections to (i) approval of the Transaction or a Competing Transaction, including the sale of all or any part of the Purchased Assets free and clear of liens, claims, encumbrances, and interests pursuant to Section 363 of the Bankruptcy Code, (ii) any Cure Amount, and/or (iii) the assumption by the Debtor and assignment to the Stalking Horse or a Successful Bidder of a Assumed Contract shall be no later than **January 18, 2010 at noon (Central Time)** (the "*Objection Deadline*").

12. As further described in the Bidding Procedures, the Debtor shall conduct the Auction on January 15, 2010 if a Qualified Bid (other than the Stalking Horse's bid) is timely received.

13. The Court shall conduct the **Sale Hearing on January 19, 2010 at 8:30 a.m. (Central Time)**, at which time the Court will consider approval of the Transaction or a Competing Transaction with the Prevailing Bidder and any objections thereto. The Sale Hearing shall be conducted at 201 St. Louis St., Mobile, AL 36602. In the event the Stalking Horse is not the Prevailing Bidder, non-Debtor parties to the Assigned Contracts may raise objections to adequate assurance of future performance at the Sale Hearing. Any party in interest who has properly and timely filed and served an objection as described herein must appear at the Sale Hearing and present such objection. **Failure to present such objection at the Sale Hearing may be deemed a waiver and bar the party from asserting any and all objections. The Sale Hearing may be continued to another date or location by announcement made at such hearing.**

14. In order to be considered, an objection to the Transaction, any Competing Transaction, any Cure Amount, or to the assumption by the Debtor and assignment to Stalking Horse of an Assigned Contract must be filed and served upon (i) Bender Shipbuilding & Repair Co., Inc., 265 Water Street, Mobile, AL 36601, Attn: Thomas B. Bender, Jr., bent@bendership.com; (ii) the Debtor's bankruptcy counsel, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, 601 Poydras Street, Suite 2775, New Orleans, LA 70130, Attn: Stewart F. Peck, Esq., speck@lawla.com; (iii) Global Hunter Securities, LLC, 400 Poydras Street, Suite 1510, New Orleans, LA 70130, Attn: Michael H. Schmidt, mschmidt@ghsecurities.com; (iv) McKenna Long & Aldridge LLP, 303 Peachtree Street, NE, Suite 5300, Atlanta, GA 30308-3265, Attn: Gary W. Marsh, Esq., gmarsh@mckennalong.com (counsel to VTM); and Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: Craig A. Wolfe, Esq. (counsel for the Official Committee of Unsecured Creditors), on or before the Objection Deadline, and must state with specificity the nature of such objection and, if applicable, the alleged Cure Amount (with appropriate documentation in support thereof).

15. If an objection to a Cure Amount is timely filed and served, the Debtor may schedule a hearing to consider such objection in the event it cannot be resolved among the parties at or prior to the Sale Hearing. **If no objection to the Cure Amount for the respective Assigned Contract is timely filed and served, the Cure Amount set forth in the Cure Notice shall be binding upon the respective non-Debtor party to the Assigned Contract for all purposes**, and the respective non-Debtor party shall be forever barred from objecting to the Cure Amount set forth in the Sale Notice, including, without limitation, the right to assert any additional cure or other amount with respect to the respective Assigned Contract. In the event one or more Assigned Contracts (as defined in the Purchase Agreement) are added to the Purchase Agreement on or before the closing of the Transaction, or in connection with any Competing Transaction, as applicable (the "*Additional Assigned Contracts*"), the Debtor will serve an additional notice on the non-Debtor parties to such Additional Assigned Contracts, and such non-Debtor parties shall have twelve (12) days thereafter to object to the Cure Amount, unless such period is shortened by the Court, *provided*, *however*, that the Debtor and the Stalking Horse (or the Prevailing Bidder) shall be deemed to have reserved the right to remove any of the Assigned Contracts (including any Additional Assigned Contracts, the "*Removed Contracts*") from the Purchase Agreement or a Competing Transaction until the closing of the Transaction. In the event that any Assigned Contracts previously included in the Purchase Agreement or a Competing Transaction are removed, the Debtor will serve notice on the non-Debtor parties to such Removed Contracts.

16. The effective date of any assumption and assignment of any Assigned Contract shall be the date on which the Sale closes (the "*Closing*"). Accordingly, any Cure Amounts to be paid under any Assigned Contract will also be paid upon the closing of the Sale or as soon thereafter as the Cure Amount is fixed by the Court or agreed upon by the parties. The payment of the Cure Amounts shall be made from the funds deposited into the Asserted Cure Costs Escrow Agreement in accordance with the terms thereof and in accordance with the terms of the Purchase Agreement or a Competing Transaction. In the event that the Debtor and the non-Debtor party to any Assigned Contract are unable to agree on the Cure Amount prior to the Closing, the Debtor may hold the disputed portion of the Cure Amount in escrow, such that the assignment of such Assigned Contract will be effective on the Closing Date.

17. The notices described below shall be good and sufficient notice of the Motion and the relief requested therein, and no other or further notice shall be required if given as follows:

(a) At least fifteen (15) days prior to the Auction, the Debtor shall serve by mail a notice that the sale notice package is available electronically via password-protected ftp website and such sale notice package shall consist of: (i) this Order (including a copy of the Bidding Procedures), and (ii) the Sale Notice in substantially the form attached to the Motion as Exhibit E, on (i) the committee of unsecured creditors appointed in this bankruptcy case, (ii) General Electric Capital Corporation ("*GECC*"), (iii) Marquette Business Credit, Inc. ("*Marquette*"), (iv) counsel to Stalking Horse; (v) all known creditors of the Debtor, (vi) any party that has asserted

5

or may have a lien and/or an interest in the Purchased Assets; (vii) any party that is reasonably known to the Debtor to be entitled to assert a lien against the Purchased Assets, (viii) all relevant federal, state and local regulatory or taxing authorities or recording offices that have the ability to impose a tax on or a charge or lien against the Purchased Assets, (ix) all Governmental Authorities with oversight of environmental or employee matters relating to the Debtor or the Debtor's business, (x) all non-Debtor parties to any executory contract or unexpired lease to which the Debtor is a party, including without limitation the Assigned Contracts, and (xi) any other party which the Debtor has determined, in its sole and absolute discretion, may have an interest in submitting a Qualified Bid.

(b) In addition, the Debtor also will publish a notice, substantially in the form of the Sale Notice, in the *The Wall Street Journal*, *The Press-Register*, *The Times-Picayune*, and *The Houston Chronicle* (collectively, the "*Newspapers*") for as often as is reasonable, pursuant to the Newspapers' publication schedules for legal notices, for no less than the ten (10) day period prior to the Bid Deadline.

18. The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or the consummation and performance of the Transaction contemplated by the Purchase Agreement or a Competing Transaction, if any (including the transfer free and clear of all liens, claims, encumbrances, and interests of each of the Purchased Assets transferred as part of the Transaction or a Competing Transaction).

19. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order. The Debtor is hereby authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements of this Order. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for ten (10) days after the entry hereof and shall be effective and enforceable immediately upon signature hereof.

20. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

21. If there is any inconsistency between this Order, the Purchase Agreement, the Bidding Procedures attached hereto as Exhibit A, and the record of the Hearing, the record of the Hearing shall control.

Dated: December 30, 2009

*Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

6

**EXHIBIT A**
(To Bidding Procedures Order)

**BIDDING PROCEDURES FOR THE SALE OF
CERTAIN ASSETS OF BENDER SHIPBUILDING & REPAIR CO., INC.**

Bender Shipbuilding & Repair Co., Inc. (the "*Debtor*"), has entered into that certain asset purchase agreement (as subsequently amended and restated, the "*Purchase Agreement*")[3], dated as of December 14, 2009, with **Vision Technologies Marine, Inc.**, (collectively with its successors and assigns, "*VTM*") for the sale of certain designated assets of the Debtor (as more particularly described in the Purchase Agreement, including the assumption of certain designated liabilities, executory contracts and unexpired leases, the "*Purchased Assets*") free and clear of all Liens, Environmental Liabilities, Liabilities and Obligations, Welfare Benefits, claims, interests and encumbrances whatsoever (the "*Interests*"), except as expressly provided in the Purchase Agreement, pursuant to section 363(f) of the Bankruptcy Code and are soliciting other higher or better bids for the sale of the Purchased Assets.

By motion filed December 15, 2009 (the "*Motion*"), the Debtor, as debtor and debtor in possession, sought, among other things, approval of the process and procedures, through which it will determine the highest or otherwise best price for the Purchased Assets, and approval of the Sale Notice (as defined in the Motion). On December 30, 2009, the United States Bankruptcy Court for the Southern District of Alabama (the "*Bankruptcy Court*") entered its order (the "*Bidding Procedures Order*"), which, among other things, authorized and directed the Debtor to determine the highest or otherwise best price for the Purchased Assets, and approved (i) the process and procedures set forth herein (the "*Bidding Procedures*") (ii) the form of Sale Notice Package (as defined in the Sale Notice) and the form of the Sale Order (as defined below).

Pursuant to the Bidding Procedures, on January 19, 2010, as further described below and in the Motion, the Bankruptcy Court shall conduct a hearing (the "*Sale Hearing*") at which the Debtor shall seek entry of an order (the "*Sale Order*") authorizing and approving the sale of the Purchased Assets (the "*Transaction*") pursuant to the Purchase Agreement or the purchase agreement submitted by the successful bidder.

The Debtor shall select the qualified bidder or bidders (each, a Qualified Bidder, as defined below) based on its determination of the highest and best offer for the Purchased Assets. The Debtor shall have the sole discretion, in consultation with its advisors and the committee of unsecured creditors appointed in this case ("*Committee*"), so long as any bidder is a Qualified Bidder and whose bid otherwise complies with the Bidding Procedures, to determine the highest and best qualifying bid or bids for the Purchased Assets, and the Debtor shall take into consideration when making such determination the net amount of the purchase price (including, where applicable,

---

[3] A copy of the Original Agreement is annexed to the Motion. A copy of the amended and restated Purchase Agreement is attached to the Bidding Procedures Order (as defined herein). Unless otherwise defined herein,
capitalized terms used herein shall have the meanings ascribed to them in the Purchase Agreement

1

payment of the Break-Up Fee, the form of consideration being offered, and the likelihood of the bidder's ability to close a transaction and the timing thereof.

### Publication of Sale Notice

Upon entry of the Bidding Procedures Order, the Debtor shall publish a notice of the sale of the Purchased Assets substantially in the form of Sale Notice attached to the Motion as Exhibit E. Such notice shall appear in *The Wall Street Journal*, *The Press-Register*, *The Times-Picayune*, and *The Houston Chronicle* (collectively, the "*Newspapers*") for as often as is reasonable, pursuant to the Newspapers' publication schedules for legal notices, for no less than a ten (10) day period prior to the Bid Deadline.

### The Bidding Process[4]

The Debtor will (i) in consultation with the Committee and GECC, determine whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence investigations regarding the Purchased Assets generally, (iii) receive offers from Qualified Bidders and immediately distribute them as provided in these Bidding Procedures, and (iv) in consultation with the Committee and GECC, negotiate any offer made to purchase the Purchased Assets (collectively, the "*Bidding Process*"). Any person who wishes to participate in the Bidding Process must be a Qualified Bidder or a Secured Creditor (as defined herein) and the Debtor is not obligated to furnish any information of any kind whatsoever relating to the Debtor or the Purchased Assets to any person who is not a Qualified Bidder. Only those bidders who have submitted Qualified Bids (as defined below) or are Secured Creditors (as defined herein) shall be eligible to participate in the Auction (as defined below).

### Obtaining Due Diligence Access

The Debtor shall afford each Qualified Bidder reasonable due diligence information regarding the Purchased Assets. Access to the Purchased Assets shall be provided upon reasonable request to the Debtor at the discretion of the Debtor within its sole business judgment. The due diligence period will end on the Bid Deadline (as defined below). No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

### Due Diligence From Potential Bidders

Each Potential Bidder (as defined below) shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection

---

[4] To the extent of any inconsistency between the terms of the bidding procedures described in the Purchase Agreement and the terms of the bidding procedures set forth herein, the terms of the bidding procedures set forth herein shall control in all respects.

2

with the sale of the Purchased Assets. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtor, in consultation with the Committee and GECC, to determine that a bid made by the Potential Bidder is not a Qualified Bid (as defined below).

### "As Is, Where Is"

The sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, except to the extent set forth in the purchase agreement between the Debtor, on the one hand, and VTM or other Prevailing Bidder (as defined below), on the other, as applicable, and the Schedules and Exhibits of any such purchase agreement (the "Prevailing Purchase Agreement"). Except as otherwise specifically provided in the Prevailing Purchase Agreement, all of the Debtor's right, title and interest in and to the Purchased Assets shall be sold free and clear of all Interests, such Interests to attach to the net proceeds of the sale of the Purchased Assets, with the same validity and priority as existed immediately prior to such sale. The Sale Order shall specifically include an injunction as to any future actions against the Purchased Assets and VTM or the other Prevailing Bidder, as applicable, to the fullest extent allowed.

### Determination of "Qualified Bidder" Status

In order to participate in the Bidding Process, each person (a "*Potential Bidder*") other than VTM must deliver (unless previously delivered) to the Debtor:

(i) An executed confidentiality agreement in form and substance satisfactory to the Debtor; and

(ii) Current audited financial statements of the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial statements of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to the Debtor, in consultation with the Committee and GECC, demonstrating such Potential Bidder's ability to close the Transaction.

A "*Qualified Bidder*" is a Potential Bidder (1) that timely delivers the documents described in subparagraphs (i) and (ii) above, (2) that the Debtor in its business judgment and in consultation with its advisors, the Committee, and GECC determines is financially able to consummate the purchase of the Purchased Assets and is reasonably likely (based on the availability of financing, experience, and other considerations) to submit a bona fide offer, and (3) that the Debtor, in its business judgment and in consultation with its advisors, the Committee, and GECC determines would be able to consummate the Transaction. The Debtor, in consultation with its advisors, the Committee, and GECC reserves the right to make the sole and final determination of who is a Qualified Bidder so long as any bidder otherwise complies with the Bidding Procedures. VTM is deemed to be a Qualified Bidder for purposes of participating in the Auction.

3

## Bid Deadline

**In order to participate in the Bidding Process, each Qualified Bidder must submit its bid no later than January 14, 2010, at noon (Central Time) (the "*Bid Deadline*"). NO BIDS WILL BE ACCEPTED PAST THE BID DEADLINE.**

On or before the Bid Deadline, a Qualified Bidder that desires to make a bid shall simultaneously deliver copies of its bid via certified mail, courier, facsimile or email to: (i) Bender Shipbuilding & Repair Co., Inc., 265 Water Street, Mobile, AL 36601, Attn: Thomas B. Bender, Jr., bent@bendership.com; (ii) the Debtor's bankruptcy counsel, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, 601 Poydras Street, Suite 2775, New Orleans, LA 70130, Attn: Stewart F. Peck, Esq., speck@lawla.com; and (iii) Global Hunter Securities, LLC, 400 Poydras Street, Suite 1510, New Orleans, LA 70130, Attn: Michael H. Schmidt, mschmidt@ghsecurities.com. Upon receipt, the Debtor shall immediately distribute a copy of each such bid to (x) VTM and its counsel McKenna Long & Aldridge LLP, 303 Peachtree St., Suite 5300, Atlanta, GA 30308, Attn.: Jeremy C. Silverman, Esq., jsilverman@mckennalong.com, (y) counsel to the Committee, Kelley Drye & Warren, LLC, 101 Park Avenue, New York, NY 10178, Attn: Craig Wolfe, Esq., cwolfe@kelleydrye.com, and (z) counsel to GECC, as Agent, King & Spalding LLP, 1180 Peachtree Street, Atlanta, Georgia 30309, Attn. Mark M. Maloney, mmaloney@kslaw.com.

## Determination of "Qualified Bid" Status

A bid received from a Qualified Bidder other than VTM will constitute a qualified bid ("*Qualified Bid*") only if it includes all of the Required Bid Documents (as defined below) and meets all of the Bid Requirements (as defined below).

<u>Requirements for Submitting a Qualified Bid</u>: All bids from Qualified Bidders other than VTM must satisfy the following requirements (collectively, the "*Bid Requirements*"):

(a)  A Qualified Bidder must submit the following "*Required Bid Documents*" to the Debtor:

    (i)  An executed purchase and sale agreement (a "*Modified Purchase Agreement*") that (1) contains substantially the same (or more favorable) terms and conditions as those contained in the Purchase Agreement, (2) offers to purchase all of the Purchased Assets, (3) does not contain any due diligence conditions or a financing contingency; (4) proffers a competing bid which is greater than the purchase price contained in the Purchase Agreement by at least $1,000,000.00; (5) provides for a closing date on the sale which is no later than three (3) Business Days following the entry of the Sale Order; and (6) provides that the offer is irrevocable until the closing of a purchase of the Purchased Assets (the "*Closing*");

(ii) A good faith deposit (the "*Good Faith Deposit*") in the form of a certified check (or other immediately available funds) payable to the order of the Debtor (or such other party as the Debtor may determine), in an amount equal to $1,000,000.00 to be held in escrow by the Escrow Agent at BBVA Compass; and

(iii) A "blacklined" comparison of the Modified Purchase Agreement against the Purchase Agreement to show any changes requested by the Qualified Bidder;

(b) The bid must consist of a good faith, bona fide offer to purchase all of the Purchased Assets for cash or cash equivalents, and/or the assumption of all or a portion of the Debtor's liabilities, which shall be irrevocable until the Closing if such Qualified Bidder is the Prevailing Bidder, or if such Qualified Bidder is the Second Highest Bidder (as defined below), 5:00 p.m. (Central time) on the date that is eight (8) days following the entry of the Sale Order;

(c) The bid must (i) fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, and (ii) include evidence of authorization and approval from each bidding or participating entity's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Purchase Agreement;

(d) The bid must be accompanied by satisfactory evidence of committed financing or other ability to complete the acquisition of the Purchased Assets, including (i) providing evidence satisfactory to the Debtor, in consultation with the Committee and GECC, that the Qualified Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the Transaction and (ii) adequate assurance of such Qualified Bidder's ability to perform under any assumed and assigned executory contract or unexpired lease;

(e) The bid must (i) identify with particularity each and every executory contract and unexpired lease, the assumption and assignment or rejection of which is a condition to closing and (ii) contain an undertaking by the Qualified Bidder to apply to the appropriate agency or governmental entity for the transfer or granting of the permits or licenses to be obtained as a condition to closing, within three (3) Business Days of the entry of the Sale Order;

(f) The bid is accompanied by satisfactory evidence of the Qualified Bidder's ability to provide adequate assurance of future performance (within the meaning of the Bankruptcy Code) under any liabilities, unexpired leases and executory contracts to be assumed by the Debtor and assigned to the Qualified Bidder;

5

(g) The bid acknowledges and represents that such bid does not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment;

(h) The Qualified Bidder acknowledges and represents that it: (1) has had an opportunity to conduct due diligence regarding the Purchased Assets prior to making its offer and does not require further due diligence; (2) has relied solely upon its own independent review, investigation and inspection of any documents and the Purchased Assets in making its bid; and (3) did not rely upon any (i) written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or (ii) the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in these Bidding Procedures; and

(i) The bid is received by the Bid Deadline.

In evaluating a Qualified Bid, the Debtor must determine that the bid (i) contains terms and conditions no less favorable to the Debtor than the Purchase Agreement and (ii) has a value greater than or equal to the sum of (v) the amount of the Break-Up Fee, plus (w) the Overbid Amount (as defined below), plus (x) the consideration to the Debtor arising out of the Purchase Agreement, including, without limitation, the payment of the Purchase Price and the assumption of the Assumed Liabilities.

A Qualified Bid shall not consist of a credit bid by any creditor pursuant to Section 363 of the Bankruptcy Code. For the avoidance of doubt, the Secured Creditors (as defined herein) may exercise their right to credit bid as provided in these Bidding Procedures.

**The Auction**

The Auction will commence at 10:00 a.m. (Central Time) on January 15, 2010, at the offices of Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, in New Orleans, Louisiana, or at such later time or other place as agreed by VTM and the Debtor, and of which the Debtor will notify: (i) counsel for the Committee, (ii) all Qualified Bidders who have submitted Qualified Bids, and (iii) counsel for the Secured Creditors (as defined herein) ((i), (ii), and (iii), the "Notice Parties").

By 5:00 p.m. (Central Time), January 14, 2009, the Debtor will provide to VTM and the Notice Parties a copy of the highest or otherwise best Qualified Bid received and copies of all other Qualified Bids and a summary thereof. In addition, the Debtor will inform VTM and each of the Notice Parties of the identity of all Qualified Bidders that may participate in the Auction.

Only VTM, the Debtor, the Notice Parties, all creditors that have liens on or security interests in the Purchased Assets, any Qualified Bidders, the Committee, and the

6

Secured Creditors (as defined herein), and such parties' principals, representatives and professionals, will be entitled to attend, participate and be heard at the Auction, and only VTM and Qualified Bidders will be entitled to make any subsequent overbids at the Auction. Notwithstanding the preceding sentence, Secured Creditors shall be entitled to submit credit bids up to the amount of their claims and as provided in these Bidding Procedures.

Each Qualified Bidder shall (i) appear in person at the Auction, or through a duly authorized representative and (ii) be required to confirm that it has not engaged in any collusion with respect to the bidding or the Transaction.

During the Auction, bidding will begin at the greater of (i) $22,000,000 (which is the Purchase Price set forth in the Purchase Agreement, plus the Break-Up Fee and a $200,000 topping fee), and (ii) the amount of the purchase price set forth in the highest or otherwise best Qualified Bid or Bids (the "*Overbid Amount*"). Subsequent bids shall be in $250,000 minimum increments.

The right of any secured creditor that is contemplated to receive an allocation as reflected in the chart (the "*Allocation Chart*") to be filed with the Court under seal and referred to on the record at the Hearing (each a "*Secured Creditor*") to credit bid for such Secured Creditor's collateral shall not be impaired by any Order of the Court unless and until a Qualified Bidder has submitted a bid consistent with the Bid Procedures for a Purchase Price that is reasonably projected to produce net proceeds distributable to Secured Creditors of $24.5 million (the "*Credit Bid Cut-Off*"). Once the Credit Bid Cut-Off is reached, no Secured Creditor shall credit bid and any credit bid submitted by a Secured Creditor prior to the Credit Bid Cut-Off shall be null and void. Nothing herein shall impair any rights of a Secured Creditor to renew a credit bid if the bid creating the Credit Bid Cut-Off is withdrawn and is not replaced with a bid by a Qualified Bidder that is reasonably projected to produce net proceeds distributable to Secured Creditors of at least $24.5 million. Each Secured Creditor's right to credit bid in accordance with these Bidding Procedures may be exercised at any time during the Auction. It is expressly agreed by all parties that the compromise reached by the Secured Creditors and the Debtor, as to allocations referenced herein, shall NOT constitute a waiver of any of the rights of those parties and shall have no res judicata or preclusive effects, and shall NOT be deemed a consent to any subsequent bidding process or any other issues arising in this Case, and shall NOT constitute any waiver with respect to any other rights or objections other than with respect to the specific resolutions set forth in the bid order, these bidding procedures and the Allocation Chart.

In the event VTM does not acquire the Purchased Assets as a result of either (i) a credit bid by a Secured Creditor or (ii) the failure of the Agent (as defined in that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of October 13, 2009) to consent to such transaction, VTM shall be entitled to the payment of $100,000 cash, payable from the Secured Creditors, which is payable as follows: Each Secured Creditor shall pay the portion of the $100,000 payment that is equal to its agreed allocable percentage share of the sale proceeds as set forth on the Allocation Chart,

7

multiplied by $100,000. Such payment shall be made by such Secured Creditor no later than the date on which such Secured Creditor receives sufficient proceeds from the disposition of its collateral to make such payment. The Secured Creditors shall promptly notify VTM in writing of the disposition of any of their collateral. In the event a Secured Creditor successfully credit bids for its collateral at the Auction, such credit-bidding Secured Creditor shall promptly pay its allocable share of the $100,000 payment to VTM as a condition to receiving its collateral as a result of its credit bid. Each Secured Creditor that pays its allocable share of the $100,000 payment shall be entitled, without a further Court order, to a superpriority administrative claim for the amount of such Secured Creditor's allocable share of the $100,000 payment; provided, however, such superpriority administrative claim shall be subject and subordinate to the professional fee carveout and the professional fees in the Debtor's approved post-petition financing budget. Any prohibition to the grant of such superpriority administrative claim in any prior orders of this Court are hereby waived and modified as necessary. In the event that the $100,000 cash payment becomes due to VTM, VTM shall immediately provide invoices for expenses incurred for environmental reports, surveys, and legal fees to the Bankruptcy Administrator and the Debtor's counsel, and VTM shall be entitled to receive a copy of the Allocation Chart.

During the Auction, the Debtor shall inform each participant which Qualified Bid reflects, in the Debtor's view (after consultation with the Committee), the highest or otherwise best offer. To the extent that such bid has been determined to be the highest or otherwise best offer entirely or in part because of the addition, deletion or modification of a provision or provisions in the Purchase Agreement, or related ancillary agreement or, if applicable, in the Qualified Bid, other than an increase in the cash purchase price, the Debtor shall provide notice to each participant of the value ascribed by the Debtor to any such added, deleted or modified provision or provisions.

The bidding at the Auction shall be transcribed and all bids made at the Auction will be announced in the presence of all other Qualified Bidders at the time such bids are made. All Qualified Bidders shall be required to disclose at the Auction the identity of the person or entity on whose behalf its bid is being submitted. Bidding at the Auction will continue until such time as the highest or otherwise best Qualified Bid is determined. Upon the conclusion of the Auction, the Debtor will review each Qualified Bid on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Transaction. **BIDS MADE AFTER THE CLOSE OF THE AUCTION SHALL NOT BE CONSIDERED BY THE DEBTOR OR THE BANKRUPTCY COURT.** The Debtor shall select, in consultation with the Committee, from among the Qualified Bids, and shall announce the Prevailing Bidder and the Second Highest Bidder at the conclusion of the Auction. In the event of any dispute concerning such selection, the Bankruptcy Court shall have the exclusive jurisdiction to adjudicate such matter. If the Prevailing Bidder (as defined below) is not VTM, the Prevailing Bidder shall be required to submit to the Debtor an executed revised purchase agreement upon which the Prevailing Bid was made within one (1) Business Day following the conclusion of the Auction.

8

The Auction may be adjourned as the Debtor, in consultation with VTM, the Committee and GECC, deems appropriate. Reasonable notice for such adjournment and the time and place for the resumption of the Auction shall be given to VTM, all Qualified Bidders that have submitted a Qualified Bid, and counsel to the Committee, and counsel to GECC.

### Acceptance of Qualified Bids

At the Sale Hearing, the Debtor will seek entry of an order authorizing and approving the Transaction (i) if no Qualified Bid is received (other than that of VTM), to VTM pursuant to the terms and conditions set forth in the Purchase Agreement, or (ii) if at least one other Qualified Bid is received, to VTM or such other Qualified Bidder as the Debtor, in the exercise of its business judgment and in consultation with the Committee and GECC, determines has made the highest or otherwise best offer to purchase the Purchased Assets (the "*Prevailing Bidder*"). Any order entered by the Bankruptcy Court approving the Transaction will include a finding as to the aggregate value of all consideration offered by the Prevailing Bid (the "*Purchase Price*"). The Closing of the Transaction on the terms and conditions set forth in the Prevailing Bid shall take place no later than three (3) Business Days following the entry of the Sale Order, unless the parties agree in writing that the Closing shall take place on a different date.

Following the Sale Hearing approving the Debtor's entry into the Transaction with the Prevailing Bidder, if such Prevailing Bidder fails to consummate an approved Transaction because of a breach or a failure to perform on the part of such Prevailing Bidder, the next highest or otherwise best Qualified Bid, as disclosed at the Sale Hearing, will be deemed to be the Prevailing Bid and the Debtor will be authorized to consummate the Transaction with the Second Highest Bidder (as defined below) without further order of the Bankruptcy Court upon at least 24 hours' notice to the Notice Parties (as defined in the Motion) and the Secured Creditors. In such case, the Prevailing Bidder shall forfeit its Good Faith Deposit, and the Debtor specifically reserves the right to seek all available damages from the defaulting Prevailing Bidder in accordance with such Modified Purchase Agreement. In the event that the Debtor fails to consummate a transaction with the Second Highest Bidder, the Second Highest Bidder shall forfeit its Good Faith Deposit and the Debtor specifically reserves the right to seek all available damages from the defaulting Second Highest Bidder in accordance with the terms of such Modified Purchase Agreement. Notwithstanding anything herein to the contrary, whether or not VTM is the Prevailing Bidder or the Second Highest Bidder, VTM shall only be obligated to purchase the Purchased Assets if required by the terms of the Purchase Agreement, as modified by VTM's highest bid at the Auction.

### Payment of Break-Up Fee

Upon consummation of a sale of the Purchased Assets by any Person (other than VTM), subject to and in accordance with the terms and conditions of the Purchase Agreement, the Debtor shall, and shall be permitted and authorized to, pay from the

9

funds acquired from such sale the Break-Up Fee contemporaneously with the receipt of such funds by wire transfer of immediately available funds to an account designated by VTM. In the event the Purchased Assets are not sold pursuant to the Bidding Procedures and the Break Up Fee becomes payable because the Debtor subsequently liquidates or otherwise disposes of a material portion of the Purchased Assets (other than via credit bidding) in one or a series of transactions consummated with a single acquirer or group of affiliated acquirers on or before September 14, 2010, the Debtor shall be permitted and authorized to pay the Break-Up Fee to VTM from the funds acquired from such sale or sales.

### Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders will be returned to the Qualified Bidders within five (5) Business Days after the day on which the Prevailing Bidder is chosen, except for the Good Faith Deposits of the Prevailing Bidder and the next highest or otherwise best Qualified Bidder (the "*Second Highest Bidder*"), which shall be retained until five (5) Business Days after the closing of the Transaction, and the Second Highest Bidder will remain obligated to purchase all of the Purchased Assets in accordance with such bid until the consummation of the sale to the Prevailing Bidder; *provided*, *however*, that in all circumstances the Good Faith Deposit of VTM shall be paid, returned or applied as set forth in the Purchase Agreement.

If a Prevailing Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Prevailing Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Prevailing Bidder, and such Good Faith Deposit irrevocably will become property of the Debtor; *provided*, *however*, that in all circumstances the Good Faith Deposit of VTM shall be paid, returned or applied as set forth in the Purchase Agreement.

### Reservation of Rights

The Debtor may, in consultation with the Committee and GECC, (a) determine, in its business judgment, which Qualified Bid, if any, is the highest or otherwise best offer so long as such bidder has complied with the Bidding Procedures, and (b) reject any bid (other than that of VTM) that, in the Debtor's commercially reasonable judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtor, its estate and its creditors.

Nothing in these Bidding Procedures shall, or shall be deemed to amend, modify, limit or otherwise affect the terms or conditions of the Purchase Agreement, or the rights and remedies of the parties thereunder or under applicable bankruptcy law.

### Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale, the Bidding Process, the Sale Hearing, the Purchase Agreement, the Auction, and/or any other matter that in any way relates to the foregoing.