UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

Case No. 09-12616-MAM

BENDER SHIPBUILDING &
REPAIR CO., INC.

DEBTOR

ORDER PURSUANT TO SECTIONS 105, 363(b),
(f), AND (m), 365 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2002, 6004 AND 6006 AUTHORIZING
(I) THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES
TO SIGNAL INTERNATIONAL, INC., (II) THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (III) THE ASSUMPTION OF CERTAIN LIABILITIES

This matter is before the Court on the motion of Bender Shipbuilding & Repair Co., Inc., as Debtor and Debtor in Possession (the "*Debtor*"), filed on December 15, 2009 (the "*Motion*"), for an order pursuant to Sections 105, 363, and 365 of Title 11 of the United States Code (11 U.S.C. §§101 *et seq.*, the "*Bankruptcy Code*") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") (a) approving that certain Asset Purchase Agreement, by and among the Debtor and Signal International, Inc. (collectively with its successors or assigns, the "*Buyer*"), dated as of January 14, 2010 (the "*Purchase Agreement*");[1] (b) authorizing the sale of the Purchased Assets[2], free and clear of all Liens, Claims[3] and Interests[4], expressly including, without limitation, the Excluded Liabilities (other than Permitted Encumbrances, as expressly provided in the Purchase Agreement) (the "*Liens*", "*Claims*" and "*Interests*"); (c) authorizing the assumption and assignment of the Assigned Contracts (individually, an "*Assigned Contract*"); (d) establishing certain cure amounts with respect to the Assigned Contracts; (e) establishing procedures with respect to such sale and, as applicable, assumption and assignment of the Purchased Assets, and (f) to obtain related relief (**Docket No. 617**), as well as the Objection filed on behalf of the United States of America (**Docket No. 639**) and the Limited Objection filed on behalf of Marilyn Wood as Mobile County Revenue Commissioner (**Docket Nos. 715 and 717**). The Court having heard the statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Motion at hearings before the Court on December 29, 2009 and January 19, 2010 (collectively the "*Hearings*"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and it further appearing that the relief requested in the Motion is in the best

---

[1] A copy of the Purchase Agreement is attached at Exhibit A.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.
[3] "Claim" is used herein as it is defined in 11 U.S.C. §101(5).
[4] "Interests" is used herein as it appears in 11 U.S.C. §363(f).

interests of the Debtor, its estate, its creditors, and all other parties in interest in the Debtor's Chapter 11 case;

THE COURT HEREBY FINDS AND DETERMINES THAT:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The court has jurisdiction over the Motion and the transactions contemplated by the Purchase Agreement pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. §§105, 363 and 365, and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A),(M),(N) and (O). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§1408 and 1409.

D. The statutory predicates for the relief sought in the Motion are Sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, and 6006.

E. As evidenced by the affidavits of service and publication previously filed with the Court (**Docket Nos. 670 and 720**), and based on the representations of counsel at the Hearings, (i) proper, timely, adequate, and sufficient notice of the Motion, the Hearing, the Sale (as hereafter defined), including the assumption and assignment of the Purchased Assets, as applicable, has been provided in accordance with Bankruptcy Rules 2002(a), 6004(a) and 6006(c) and in compliance with the Bidding Procedures Order, entered December 30, 2009 (**Docket No. 667**), establishing bidding procedures for the auction (the "*Auction*") of the Purchased Assets, (ii) such notice was good and sufficient, appropriate under the particular circumstances, and reasonably calculated to reach and apprise all holders of Liens, Claims and Interests about the sale thereof, the Auction, the Bidding Procedures, the Sale, and the assumption of the Purchased Assets and (iii) no other or further notice of the Motion, the Hearing, the Sale, or the assumption and assignment of the Purchased Assets is or shall be required.

F. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Hearings, and (ii) the representations of counsel made on the record at the Hearings, the Debtor has marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Auction was duly noticed, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

G. The Debtor (i) has full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of and, as applicable, the assumption and assignment of, the Purchased Assets by the Debtor has

2

been duly and validly authorized by all necessary corporate action, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Debtor of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtor to consummate such transactions.

      H.    Approval of the Purchase Agreement and consummation of the transactions contemplated thereby (the "*Sale*") at this time is in the best interests of the Debtor, its creditors, its estate, and other parties in interest.

      I.    The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

      J.    The Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be invalidated or avoided under 11 U.S.C. §363(n).

      K.    The Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

      L.    The Buyer is not an "insider" of the Debtor, as that term is defined in Section 101 of the Bankruptcy Code.

      M.    The Buyer is not a successor to the Debtor under any doctrine of successor liability.

      N.    The consideration provided by the Buyer pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery to the Debtor's estate than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state (including without limitation the State of Alabama), territory, possession, or the District of Columbia.

      O.    The Sale must be approved and consummated promptly in order to preserve the viability of the business to which the Purchased Assets relate as a going concern.

      P.    The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Buyer with all right, title, and interest to the Purchased Assets free and clear of all Liens, Claims and Interests in such Purchased Assets arising from circumstances and conditions first existing on or prior to the consummation of the Sale (the "*Closing*"), except as expressly provided in the Purchase Agreement, whether such Liens, Claims and Interests are known or

3

unknown, contingent or otherwise, whether arising prior to or subsequent to the Closing, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability.

Q. Pursuant to Section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets to the Buyer will be free and clear of all Liens, Claims and Interests in such Purchased Assets.

R. The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, its creditors, and other parties in interest, if the Court did not enter an order determining that the sale of the Purchased Assets to the Buyer, the assignment of the Purchased Assets to the Buyer, and the assumption of the Assumed Liabilities by the Buyer were not, except as otherwise provided for in the Purchase Agreement, free and clear of all Liens, Claims and Interests of any kind or nature whatsoever.

S. The Debtor may sell and assume and assign, as applicable, the Purchased Assets free and clear of Liens, Claims and Interests in accordance with Section 363(f) of the Bankruptcy Code because, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims and Interests and (ii) non-Debtor parties to Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Liens, Claims and Interests and (ii) non-Debtor parties to Purchased Assets who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims and Interests, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest.

T. The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign, as applicable, the Purchased Assets and Assigned Contracts to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Purchased Assets and Assigned Contracts is in the best interests of the Debtor, its estate, its creditors, and other parties in interest. The Purchased Assets and Assigned Contracts being assigned to, and the liabilities being assumed by, the Buyer are an integral part of the Purchased Assets and Assigned Contracts being purchased by the Buyer and, accordingly, such assumption and assignment of the Purchased Assets and Assigned Contracts and Assumed Liabilities are reasonable and enhance the value of the Debtor's estate.

U. The Debtor has (i) cured or will cure in accordance with the terms of the Purchase Agreement any default existing prior to the date of the Closing under any of the Purchased Assets and Assigned Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation or will provide compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of the Closing under any of the Purchased Assets and Assigned Contracts, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has provided

4

adequate assurance of future performance under the Purchased Assets and Assigned Contracts, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

V. Pursuant to the Order on the Application for Approval of the Employment of Global Hunter Securities, LLC, as Financial Advisor and Investment Banker for the Debtor entered on September 25, 2009 ("Global Hunter Employment Order") and the agreement ("Global Hunter Agreement") between Global Hunter Securities , LLV and the Debtor referenced therein, Global Hunter Securities, LLC is entitled to a transaction fee on the Sale at the Closing as set forth herein.

NOW THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:

### General Provisions

23. The Motion is granted, as further described herein.

24. Except as provided herein, the Objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such Objections, are overruled on the merits, with the exception of any Objections to cure amounts identified on the record of the Hearing which, if still unresolved, will be the subject of a further hearing to be scheduled and will be resolved in accordance with the terms of the Purchase Agreement and the Bidding Procedures Order.

### Approval of the Purchase Agreement

25. The Purchase Agreement and Schedules and Exhibits thereto, as amended, and all of the terms and conditions thereof, are hereby approved as if fully set forth and incorporated herein; provided, however, that the terms and conditions of this Order shall control in the event of any conflict with or ambiguity regarding the terms and conditions of the Purchase Agreement.

26. Pursuant to 11 U.S.C. §363(b), the Debtor is authorized and directed to perform its obligations under, and comply with the terms of, the Purchase Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

27. The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Purchase Agreement, together with all additional instruments and documents that the Debtor or the Buyer deem necessary or appropriate to implement the Purchase Agreement and effectuate the Sale, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

28. This Order and the Purchase Agreement shall be binding in all respects upon all creditors, claimants of, and holders of equity interests in the Debtor and its successors and assigns (whether known or unknown), any holders of Liens, Claims and Interests, all non-Debtor parties to the Purchased Assets and to the Assigned Contracts, all successors and assigns of the Buyer, the Debtor and its affiliates and subsidiaries, the Purchased Assets, and any trustees appointed in the Debtor's Chapter 11 case and upon a conversion to Chapter 7 under the Bankruptcy Code and shall not be subject to rejection. Nothing contained in any Chapter 11 plan confirmed in the Debtor's Chapter 11 case or the confirmation order confirming any such Chapter 11 plan shall conflict with or derogate from the provisions of the Purchase Agreement and this Order.

### Transfer of Purchased Assets

29. Except for the Assumed Liabilities, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Buyer, and upon the Closing shall be, free and clear of all Liens, Claims and Interests of any kind or nature whatsoever and all such Liens, Claims and Interests of any kind or nature whatsoever shall attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they have as against or in the Purchased Assets, subject to any Claims and defenses the Debtor and/or its estate may possess with respect thereto, and subject to the amounts or percentages, as the case may be, contained in the allocation that was the subject of a stipulation between certain secured creditors at the Hearing held on December 29, 2009. Except with regard to the distribution of proceeds of the Sale to Regions Equipment Finance Corporation and/or Regions Bank described herein below (regarding certain personal property acquired by the Debtor from Complete Equipment, Inc.), the distribution of proceeds of the Sale shall not constitute a release or waiver of any claims of the Debtor and/or its estate for (i) avoidance of the lien or security interest that gave rise to the distribution and (ii) recovery of all or a part of the distribution as a result of such avoidance. However, all rights, claims, and defenses of all secured creditors with regard to any such actions are specifically reserved and nothing contained in this Order shall be deemed to modify any prior Order of this Court regarding allowance of any claim including, but not limited to, the Order entered herein on January 21, 2010 (**Docket No. 734**).

30. Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, tort claimants, litigants, trade and other creditors and past and present employees of the Debtor, holding Liens, Claims and Interests of any kind or nature whatsoever against or in the Debtor, the Excluded Assets or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Excluded Assets, the Purchased Assets, the ownership, control or operation of the Purchased Assets prior to the Closing are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' Liens, Claims and Interests.

6

31. Nothing contained in the Purchase Agreement or this Order shall be deemed to constitute any release or exculpation of environmental liabilities to the United States, which may arise under applicable Federal statute, subject to any defenses available there under, including but not limited to 42 U.S.C. Section 9607(r), or any liabilities to the United States that may arise under Title 26, including 26 U.S.C. Sections 3505, 6672, or under any applicable Federal criminal statute. In addition, nothing contained in this Order or in the Purchase Agreement shall in any way diminish the obligations of the Debtor to comply with Environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.

32. The Court sustains the Objection of the United States. Any successor liability that may exist solely under Federal police power, regulatory or labor laws is not affected by this order and is not abrogated by the Purchase Agreement or this Order. The parties specifically recognize that any successor liability under the Uniform Services Employment and Reemployment Rights Act is not affected by the Purchase Agreement or this Order. Nothing in this Order or the Purchase Agreement should be construed to create for any governmental unit any substantive right that does not already exist under law.

33. Pursuant to Section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets to the Buyer will be free and clear of all Liens, Claims and Interests in such Purchased Assets.

34. The transfer of the Purchased Assets to the Buyer pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever other than the Assumed Liabilities.

35. If any person or entity that has filed financing statements, mortgages, mechanic's liens, maritime liens, lis pendens, or other documents or agreements evidencing Liens, Claims and Interests in the Purchased Assets has not delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims and Interests which the person or entity has with respect to the Purchased Assets, then (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens, Claims and Interests in the Purchased Assets of any kind or nature whatsoever. Any action taken by the Debtor pursuant to this paragraph shall be null and void to the extent such action, if given effect, would eliminate, impair or diminish the interest of any party in assets of the Debtor other than the Purchased Assets.

36. On the Closing of the Sale, each of the Debtor's creditors and any other holder of an Interest is authorized and directed to execute such documents and take all

7

other actions as may be necessary to release its Liens, Claims and Interests in the Purchased Assets, if any, as such Liens, Claims and Interests may have been recorded or may otherwise exist.

37. Except as otherwise provided in paragraph 26 of this Order, on the Closing of the Sale and subject to the terms of the Purchase Agreement and the provisions of this Order, the Debtor shall deposit and hold in escrow the proceeds derived from the Sale in accordance with the Final DIP Order entered by this Court on November 3, 2009. Provided, however, that the quarterly fee arising as a result of the Sale shall be deposited in a trust account maintained by counsel for the Debtor for payment pursuant to applicable local rules.

38. Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rule 7070 and Fed. R. Civ. Pro. 70, this Order shall and does, as of the date of the Closing and the payment of the purchase price described in the Purchase Agreement, divest the Debtor and its estate of all right, title and interest in the Purchased Assets.

## Assumption and Assignment
## to the Buyer of Assigned Contracts

39. Pursuant to Section 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale, the Debtor's assumption of and assignment to the Buyer of the Assigned Contracts, and the Buyer's acceptance of the assignment of the Assigned Contracts, on the terms set forth in the Purchase Agreement, is hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

40. The Debtor is hereby authorized and directed in accordance with Sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing of the Sale, the Assigned Contracts, as applicable, free and clear of all Liens, Claims and Interests of any kind or nature whatsoever other than the Assumed Liabilities, and (b) execute and deliver to the Buyer such documents or other instruments as the Buyer deems may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to the Buyer.

41. With respect to the Purchased Assets and Assigned Contracts: (a) each of the Assigned Contracts is an executory contract or an unexpired lease under Section 365 of the Bankruptcy Code; (b) the Debtor may assume each of the Assigned Contracts in accordance with Section 365 of the Bankruptcy Code; (c) the Debtor may assign each of the Assigned Contracts in accordance with Sections 363 and 365 of the Bankruptcy Code, and any provisions of such Assigned Contracts that prohibit or condition the assignment of any of such Assigned Contracts or allow the non-debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under Sections 363 and 365 of

8

the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of each of the Assigned Contracts have been satisfied; (e) the Assigned Contracts shall be transferred and assigned to, and following the Closing remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Assigned Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Buyer (except as provided below); and (f) upon Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest in the Purchased Assets, including the right, title and interests in each of the Assigned Contracts.

42. All defaults or other obligations of the Debtor related to the Assigned Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtor at the Closing or as soon thereafter as practicable by payment of the cure amounts (the "*Cure Amounts*"), and the Buyer shall have no liability or obligation related to any act or occurrence arising or accruing prior to the date of the Closing, except as otherwise expressly provided in the Purchase Agreement. The payment of the Cure Amounts shall be made from the funds deposited in escrow by the Buyer under the Asserted Cure Costs Escrow Agreement in accordance with the terms thereof and in accordance with the terms of the Purchase Agreement. The schedule attached hereto as, Exhibit B reflects the Cure Amounts, which are the sole amounts necessary under Section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-Debtor parties in connection with the assumption by the Debtor and the assignment to the Buyer of the Assigned Contracts. Notwithstanding the foregoing, the Debtor may correct and modify the Cure Amounts in consultation with the Official Committee of Unsecured Creditors (the "*Committee*"), Agent or Lenders (as defined in the Debtor in Possession Loan Agreement), and the non-Debtor parties to the Assigned Contracts, and to pay the Cure Amounts from the proceeds derived from the Sale; provided, however, that the Debtor shall not make any cure payments from the Asserted Cure Costs Escrow in an amount greater than stated in Exhibit B unless and until (i) the Debtor has provided notice in writing of the increased Cure Amount to the Committee and Agent or Lenders, and (ii) ten (10) calendar days have passed and no objection to the increased Cure Amount has been filed. If any such objection is filed, the Debtor may pay the undisputed Cure Amount and shall schedule a hearing to resolve the objection over the additional Cure Amount. To the extent objections to the Cure Amounts are not resolved consensually, the Debtor will schedule a hearing to consider such objections subsequent to the Hearings and, pending resolution of such objections, shall retain in the Asserted Cure Costs Escrow the amount equal to the differential between the cure amounts alleged in the objections to the Cure Amounts and the respective Cure Amounts set forth in the Exhibit B. The payment of any Cure Amount to any "affiliate" or "insider" of the Debtor (as such terms are defined in Section 101 of the Bankruptcy Code) or any other "person" (as such term is defined under Section 101 of the Bankruptcy Code) identified by the Debtor in this cases as a "related party" or any other non-Debtor party to an Assumed

9

Contract that was not entered into in an arm's length transaction with the Debtor (collectively, a "Related Party") shall not be deemed a waiver or release of any estate claims against the Related Party and shall not have any preclusive effect as to the allowance of such Related Party's claim in this case or the status or characterization of such Related Party's Assumed Contract.

43. Each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, or, against the Buyer, any counterclaim, defense, setoff or any other Claim asserted or assertable against the Debtor; and (ii) imposing or charging against the Buyer or its affiliates any rent accelerations, assignment fees, increases or any other fees as a result of the Debtor's assumption and assignment to the Buyer of the Assigned Contracts. The validity of such assumption and assignment of the Assigned Contracts shall not be affected by any dispute between the Debtor and any non-Debtor party to an Assigned Contract relating to such contract's respective Cure Cost.

44. Except as provided in the Purchase Agreement or this Order, after the Closing, the Debtor and its estate shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtor, its successors or assigns, its property or its assets or estate.

45. The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Buyer's rights to enforce every term and condition of the Assigned Contracts.

**Additional Provisions**

46. The Debtor shall be authorized and is directed to pay at the Closing any necessary closing costs and other prorations and costs in accordance with the terms of the Purchase Agreement; provided, however, no such costs or prorations shall be paid to any Related Party without a further order of this Court.

47. At the Closing of the Sale or as soon thereafter as practicable, the Debtor shall be authorized and is directed to pay from the proceeds of the Sale the following: (a) the Cure Amounts; (b) $604,125.00 to Regions Equipment Finance Corporation ("REFC") and/or Regions Bank, to be allocated as directed by counsel jointly representing REFC and Regions Bank (regarding certain personal property acquired by the Debtor from Complete Equipment, Inc.) no less than one Business Day prior to the Closing Date; (c) ad valorem taxes due to the Mobile County Revenue Commissioner on the Purchased Assets being sold in an amount not to exceed $534,111.00; (d) the Break-Up Fee of $800,000.00 to Vision Technologies Marine, Inc.; and (e) $312,500.00 to

10

Global Hunter Securities, LLC representing the 1% transaction fee due for the Sale under the Global Hunter Employment Agreement, which fee is finally allowed.

26. Additionally, as soon after the Closing of the Sale as practicable, the Debtor shall pay to Prudential Insurance Company of America, Inc. ("*Prudential*") and Maritrans Operating Company, L.P. ("*Maritrans*") from the proceeds of the Sale certain amounts to be calculated based upon the allocation agreement entered into and which was the subject of a stipulation between certain parties at the Hearing held on December 29, 2009 (and as such allocation stipulation was clarified with respect to the amounts to be paid to Prudential and Maritrans from the proceeds of sale as set forth on the record of the sale hearing on January 19, 2010). The authorization to pay and the payment of such amounts shall not constitute the final allowance of any of the claims or portions of any claims of Maritrans or a waiver by the Debtor or any other party of any right to seek repayment of the payments made pursuant to this paragraph, and such rights (as well as all of Prudential's and Maritrans's right, claims and defenses in respect of any such action to seek repayment) are specifically reserved.

27. Any amounts received by (i) the Debtor as payment from Buyer for work-in-progress, (ii) the Debtor attributable to the recent bid submitted to the United States Coast Guard, and (iii) Tom Bender attributable to consummation of the transactions contemplated by the Purchase Agreement will be immediately deposited by the Debtor in accordance with the terms of the Final DIP Order entered by this Court on November 3, 2009.

48. 28. Pursuant to the terms of the Purchase Agreement and Schedules and Exhibits, as amended, following the Closing, the Debtor has certain Continuing Obligations, as defined in the Motion. Should the Debtor default with respect to the satisfaction of one of its Continuing Obligations, Buyer may forward to Debtor, Debtor's counsel, and counsel for the Committee by certified mail, return receipt requested, a written Notice of Default (hereinafter referred to as "*Notice*") advising Debtor of the default and requesting Debtor cure said default within ten days of the posting of said Notice. Should the Debtor fail to cure the default within the ten-day period specified in the Notice, upon Buyer submitting to this Court a Default Motion along with an Affidavit setting forth Debtor's default, the posting of the Notice to the parties identified in this paragraph, and the lack of cure of the default, Buyer may be entitled to an allowed administrative expense priority claim pursuant to Section 503(b) of the Bankruptcy Code in an amount to be determined by the Court after notice and a hearing.

49. 29. The consideration provided by the Buyer for the Purchased Assets under the Purchase Agreement is deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state (including, without limitation, the State of Alabama) territory, possession, or the District of Columbia.

50. 30. The consideration provided by the Buyer for the Purchased Assets under the Purchase Agreement is fair and reasonable and the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

11

51. 31. This Order (a) shall be effective as a determination that, except for the Assumed Liabilities, at Closing, all Liens, Claims and Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated (and all such Liens, Claims and Interests will attach to the proceeds of the Sale as set forth in Paragraph 7 of this Order), and that the transfer of the Purchased Assets and assignment of the Assigned Contracts have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities that may be required by operation of law, the duties of its office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

52. 32. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents, instruments, and permits necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

53. 33. All entities that are in possession of some or all of the Purchased Assets on the date of the Closing are hereby directed to surrender possession of the Purchased Assets to the Buyer at Closing.

54. 34. Except for the Assumed Liabilities or as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets other than for the Assumed Liabilities, and shall have no obligations arising out of or related to the Excluded Assets, any Excluded Contract, or Excluded Liabilities or for any other liability or other obligation of the Debtor. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, the Buyer shall not be liable for any Liens, Claims and Interests in or against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character including, but not limited to, any theory of antitrust, environmental, tort, successor or transferee liability, labor law, employment or employee benefits law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing, including, but not limited to, liabilities on account of any Taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the ownership, control or operation of the Purchased Assets prior to the Closing or the ownership, control or operation of the Excluded Assets, any Excluded Contract, and Excluded Liabilities prior to or after the Closing.

55. 35. Nothing in this Order or in the Purchase Agreement shall be deemed to be a release or exculpation of any duty the purchaser may have, under Federal

12

regulatory, civil rights, or police power law with applicable successor liability, to take prospective action to cure past discrimination or other violation. The parties specifically agree that any reemployment duties that may exist under the successor liability provisions of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. Section 4303 et seq. are not released or abrogated. Nothing in this Order or the Purchase Agreement should be construed to create for any governmental unit any substantive right that does not already exist under law.

56.    36.    Under no circumstances shall the Buyer be deemed a successor of or to the Debtor for any Interest against or in the Debtor, the Purchased Assets, the Excluded Assets, any Excluded Contract or the Excluded Liabilities of any kind or nature whatsoever. Except for the Assumed Liabilities, the sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any Liens, Claims and Interests, and Liens, Claims and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor. Except for the Assumed Liabilities, all persons holding Liens, Claims and Interests against or in the Debtor, the Purchased Assets, the Excluded Assets or the Excluded Liabilities of any kind or nature whatsoever (including, but not limited to, the Debtor and/or its respective successors, including any trustees thereof, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state and local officials, maintaining any authority relating to any environmental, health and safety laws, and its respective successors or assigns) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Liens, Claims and Interests of any kind or nature whatsoever against the Buyer, its property, its successors and assigns, or the Purchased Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtor, the Debtor's estate, its respective officers, directors, shareholders, the Purchased Assets, the Excluded Assets, any Excluded Contract or the Excluded Liabilities. Following the Closing, no holder of an Interest in the Debtor shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to such Interest, or any actions that the Debtor may take in its Chapter 11 case.

57.    37.    Nothing contained in the Purchase Agreement or this Order (i) shall be deemed to sell, transfer, assign, or convey the Excluded Assets (as defined in Section 2.01(b) of the Purchase Agreement) to the Buyer and the Debtor shall retain all right, title and interest to, in and under the Excluded Assets or (ii) shall be deemed to be an assumption by the Buyer of any Excluded Contract (as defined in Section 5.06(a) of the Purchase Agreement) or the Excluded Liabilities (as defined in Section 2.02(b) of the Purchase Agreement). Under no circumstances shall the Buyer be deemed a successor of or to the Debtor for any liabilities of the Debtor relating to the Excluded Assets, any Excluded Contract or Excluded Liabilities.

58.         38.    In the event of any conflict between the provisions of this Order and the provisions of the Purchase Agreement, the provisions of this Order shall govern. The Debtor and the Buyer hereby are authorized to make any nonmaterial amendments, modifications, or waivers to the Purchase Agreement without notice or

13

Case 09-12616   Doc 746   Filed 01/28/10   Entered 01/28/10 14:05:33   Desc Main
Document      Page 13 of 15

further order of the Court and are authorized to execute any additional agreements necessary to document such amendments, modification, or waivers. In the event that any such amendments, modifications, or waivers are made, the Debtor shall file into the record of this matter a Notice of Nonmaterial Changes to the Purchase Agreement within two (2) business days after the Closing and shall attach thereto copies of any written amendments, modifications or waivers in relation to the Purchase Agreement.

59. 39. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer, (b) compel delivery of the Purchase Price or performance of other obligations owed by or to the Debtor, (c) resolve any disputes arising under or related to the Purchase Agreement and any and all ancillary agreements related to such Purchase Agreement, (d) interpret, implement and enforce the provisions of this Order, and (e) protect the Buyer against (i) any of the Excluded Liabilities, (ii) the assertion of any Liens, Claims and Interests against the Purchased Assets, of any kind or nature whatsoever, or (iii) the assertion of any Liens, Claims and Interests arising out of the Excluded Assets, any Excluded Contract or the Excluded Liabilities.

60. 40. The transactions contemplated by the Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of any of the Purchased Assets), unless such authorization is duly stayed pending such appeal. The Buyer is a purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

41. The Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be invalidated or avoided under 11 U.S.C. §363(n).

61. 42. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate and its creditors, the Buyer and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an Interest in the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

62. 43. Nothing contained in any plan of reorganization confirmed in the Debtor's Chapter 11 case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

14

Case 09-12616    Doc 746    Filed 01/28/10    Entered 01/28/10 14:05:33    Desc Main
Document      Page 14 of 15

63. 44. The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

64. 45. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate or an adverse effect on the rights or interests of the Agent (as defined in the Debtor in Possession Loan Agreement) and/or the Lenders (as defined in the Debtor in Possession Loan Agreement). Unless consented to in writing by the Agent, any modification, amendment or supplement that adversely affects the rights or interests of the Agent and/or Lenders shall, in the absence of a further order of this Court on notice to such party, be null and void and without effect. Furthermore, in the event that any amendments or modifications are made, the Debtor shall file into the record of this matter a Notice of Nonmaterial Changes to the Purchase Agreement within two (2) business days after the Closing and shall attach thereto copies of any written amendments, modifications or waivers in relation to the Purchase Agreement.

65. 46. The provisions of this Order are non-severable and mutually dependent and, pursuant to Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed and shall be effective immediately upon entry.

66. 47. The Debtor shall immediately serve a copy of this order on (i) the committee of unsecured creditors appointed in this bankruptcy case, (ii) General Electric Capital Corporation ("*GECC*"), (iii) Marquette Business Credit, Inc. ("*Marquette*"), (iv) counsel to Stalking Horse; (v) all known creditors of the Debtor, (vi) any party that has asserted or may have a lien and/or an interest in the Purchased Assets; (vii) any party that is reasonably known to the Debtor to be entitled to assert a lien against the Purchased Assets, (viii) all non-Debtor parties to any executory contract or unexpired lease to which the Debtor is a party, including without limitation the Assigned Contracts; (ix) all relevant federal, state and local regulatory or taxing authorities or recording offices that have the ability to impose a tax on or a charge or lien against the Purchased Assets, and (x) all Governmental Authorities with oversight of environmental or employee matters relating to the Debtor or the Debtor's Business.

Dated: January 28, 2010

*Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

15