UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

BENDER SHIPBUILDING & REPAIR,
CO., INC.,                                     Case No. 09-12616-MAM-11

    *Postconfirmation Debtor*.

### ORDER DENYING THE APPLICATION OF EMERIC, INC., FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE CLAIM

    Christopher A. Arledge, Attorney for Emeric, Inc., Mobile, Alabama
    Craig A. Wolfe, Attorney for the Postconfirmation Debtor, New York, New York

    This case is before the Court on the application of Emeric, Inc., for an order allowing its claim of $38,439.34 as an administrative expense pursuant to 11 U.S.C. § 503(a) and (b)(1)(A). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is denying the application.

### FACTS

    On June 9, 2009, an involuntary bankruptcy petition was filed against Bender Shipbuilding & Repair, Co., Inc. An order for relief was entered on July 1, 2009 and the debtor converted the case to one under chapter 11. Prior to the bankruptcy, Emeric, Inc., provided prescription drugs to the worker's compensation claimants of Bender. Emeric claims it provided $38,439.34 of drug benefits to worker's compensation claimants after Bender's bankruptcy filing for which Emeric has not been reimbursed. Bender claims, and Emeric cannot prove otherwise,

that all of the worker's compensation claimants to whom prescription drugs were furnished were recipients of worker's compensation before June 9, 2009, the date of the bankruptcy filing.

Bender filed a motion on July 1, 2009, requesting authority to pay worker's compensation claims. That motion was granted on July 2, 2009. Between August 18, 2009 and March 12, 2010, Bender paid Emeric $87,336.87 for prescription drugs. The $38,439.34 claimed is the amount remaining unpaid.

LAW

Emeric, Inc., as the movant, must prove its case by a preponderance of the evidence. *In re Sports Shinko (Florida) Co., Ltd*., 333 B.R. 483, 492 (Bankr. M.D. Fla. 2005). Section 503(b) states that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." "The Eleventh Circuit has interpreted this Code provision to not only require 'that the expense be "actual" and "necessary," but also that there be a concrete benefit to the debtor's estate.'" *In re Atlanta Retail, Inc*., 287 B.R. 849, 858 (Bankr. N.D. Ga. 2002) (quoting *In re Beverage Canners Int'l Corp*., 255 B.R. 89,92 (Bankr. S.D. Fla. 2000), citing *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir. 1986)).

Emeric makes two arguments. First, since the debtor paid over two-thirds of its claim before stopping, the debtor cannot now deny that the remainder is owed as an administrative expense pursuant to the Court's July 2, 2009 order. Second, the claim is a proper administrative claim pursuant to 503(a) and (b)(1)(A) in any event since Bender, by state law, had to have worker's compensation insurance coverage to operate.

Bender (the Postconfirmation Debtor) argues that all of the benefits would go to pay a prepetition debt of Bender to employees injured prefiling. Whatever prepetition agreements the

worker's compensation beneficiaries had with Bender, the agreements were "rejected, terminated and discharged" by Bender's plan.

A.

Emeric's first argument is an estoppel or waiver type claim. Since Bender paid part of the claim, it admits that it is liable for the entire claim. The Court concludes that no estoppel or waiver has occurred. First, the order of July 2, 2009, <u>authorized</u> payment to Emeric, but did not require it. Second, the order did not specify that the payments constituted an administrative expense (although that is probably what they were). Third, the plan provided that prepetition contracts and agreements that were not expressly assumed were rejected at confirmation. The liability for payment of Emeric's bill arose prepetition at the time of the injury of each employee. Therefore, the claim was a prepetition one. The agreement to pay for the employees' prescriptions was not assumed by Bender after its plan was confirmed. In fact, Bender is no longer an operating business and is in a liquidation mode. Emeric filed no objection to Bender's plan or the plan's treatment of executory contracts. Even if the Emeric claim was paid in part under the July 2, 2009 order, and even if it was an administrative expense, Emeric lost its right to further payments by virtue of the confirmation order.

B.

Pursuant to 11 U.S.C. § 503(b)(1)(A), a claim is an administrative expense if (1) it arises from a postpetition claim against the debtor; and (2) the consideration given by the claimant was actual and necessary and beneficial to the debtor in the operation of its business. *Atlantic Retail*, 287 B.R. at 858; *In re Lambert*, 2010 WL 3927067, *2 (Bankr. M.D. Ala. 2010) (citing *Tavormina v. Weiner (In re Alchar Hardware Co., Inc.)*, 759 F.2d 867, 868-69 (11th Cir. 1985)). As stated above, Emeric's transaction or claim upon Bender arose from prepetition injuries to

Bender employees according to the evidence. Therefore, Emeric's claim is a prepetition one, even though the payment was to be made postpetition. Emeric does not fulfill the postpetition prong of the test. The payments were of benefit to Bender because the payments allowed Bender to operate lawfully in the state of Alabama. *See* ALA. CODE Title 25, Chapter 5 (2010). Emeric fulfills the prong that the payments were necessary and beneficial. Therefore, Emeric has only fulfilled one prong of the test.

For the reasons indicated, the administrative expense claim of Emeric must be denied. It is not an administrative expense. Bender's partial payment of the claim was fortuitous for Emeric, but did not establish a right to payment of the entire claim under the law or the plan.

Dated:   February 17, 2011

                                        /s/ Margaret A. Mahoney
                                        MARGARET A. MAHONEY
                                        CHIEF U.S. BANKRUPTCY JUDGE