UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

BENDER SHIPBUILDING AND             Case No. 09-12616-MAM

REPAIR CO., INC,

        Post-Confirmation Debtor.

## ORDER DENYING THE POST-CONFIRMATION DEBTOR'S MOTION FOR SUMMARY ADJUDICATION AND DENYING WOODROCK & CO.'S CROSS MOTION FOR SUMMARY ADJUDICATION

Brian K. Trachtenberg, Attorney for Woodrock & Co., Houston, Texas
Craig A. Wolfe, Attorney for the Post-Confirmation Debtor, New York, New York

       This matter is before the Court on the Post-Confirmation Debtor's motion for summary adjudication of a discrete legal issue concerning its objection to Woodrock & Co.'s fee application. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. For the following reasons, the Post-Confirmation Debtor's motion is DENIED and Woodrock & Co.'s cross motion is DENIED.

## FACTS

       On February 28, 2012, Woodrock & Co. ("Woodrock") filed a final application for compensation and disbursement of funds from escrow related to its employment by the Post-Confirmation Debtor ("Debtor"). Woodrock was employed by the Debtor to provide financial advisory assistance for the sale of certain assets of the Debtor located in Mexico (the "Mexican Assets"). The Mexican Assets included two vessels and two subsidiary companies of the Debtor,

1

Astilleros Bender, S. de R.L. de C.V. ("Astilleros") and Inmobiliaria Dos Naciones, S. de R.L. de C.V. ("IDN") (collectively, the "Mexican Subsidiaries"). The Debtor previously retained Global Hunter Securities to do the same job, but Global Hunter was unable to secure an acceptable offer for the Debtor's Mexican Assets and the Debtor hired Woodrock to replace Global Hunter.

The terms of Woodrock's employment were set out in an Engagement Agreement, which was approved by this Court on October 29, 2010. The Engagement Agreement awards Woodrock a fee for each "M&A Transaction" completed during Woodrock's employment. M&A Transaction is defined as "a financial or strategic transaction (which may include a sale, transfer, merger, acquisition, consolidation, or other type of transaction) involving the assets, securities, or business of Astilleros Bender, S de RL de CV, the Company's assets and operations located near and around Tampico, Mexico." "Company" is defined in the Engagement Agreement as "Bender Shipbuilding & Repair Co., Inc. (collectively, with its wholly and partially-owned subsidiaries, joint venture entities, and/or off-balance sheet vehicles)."

The Mexican Assets were sold to Grupo TMM ("TMM") for $5,390,500. The sale was approved by this Court on December 1, 2011, pursuant to 11 U.S.C. § 363. The Court's Order describes the assets sold as:

> (i) The transfer of two vessels to one of the Post-Confirmation Debtor's Mexican subsidiaries, Inmobiliaria Dos Naciones, S. de R.L. de C.V. ("IDN"),
>
> (ii) The sale of stock of IDN to Grupo TMM, S.A.B. and Inmobiliaria TMM, S.A. de C.V. (together, the "IDN Purchasers"),
>
> (iii) The sale of stock of another of the Post-Confirmation Debtor's Mexican subsidiaries, Astilleros Bender, S. de R.L. de C.V. ("Astilleros") to Nupak de México, S.A. de

C.V., and Roberto Villalvazo García (together, the "Astilleros Purchasers").

The sale of stock to TMM occurred pursuant to two share purchase agreements ("SPAs"). Those SPAs included the balance sheets of the Mexican Subsidiaries. The SPAs were filed in conjunction with the Court's December 1, 2011 Order. 100% of the stock of the Mexican Subsidiaries was transferred pursuant to the sale.

The Engagement Agreement explains that Woodrock shall be paid, with respect to any M&A Transaction, a cash fee equal to the greater of:

(i) In the event of a merger, seven percent (7.00%) of the Total Transaction Value; or

(ii) In the event of an acquisition, seven percent (7.00%) of the value of the Total Transaction Value; or

(iii) $250,000.

Total Transaction Value ("TTV") is defined as

[T]he total amount of cash and the fair market value (on the date of payment) of all other property paid or payable directly or indirectly (i) to the Company, its shareholders, employees, or security holders, (ii) by the Company, its partners, employees, or security holders, or (iii) into any new entity or joint venture. Total Transaction Value shall also include (i) amounts paid or payable pursuant to covenants not to compete and making due allowance, without limitation, for amounts payable pursuant to employment contracts, consulting agreements, employee benefit plans, or other similar arrangements, and (ii) the value of any liabilities (including the principal amount of any indebtedness for borrowed money) repaid, retired, and/or assumed in connection with or in anticipation of an M&A Transaction, or existing on the balance sheet of the Company or any other party involved in an M&A Transaction (in the case of a merger, a purchase, or other transfer of stock or similar transaction) or assumed directly or indirectly by the Company or such other party (in the case of a purchase or other transfer of assets or similar transaction).

In connection with the sale, $692,028.96 was escrowed by the Debtor to satisfy any fees due Woodrock for its work on the sale of the Mexican Assets. Woodrock's application seeks

3

disbursement of the entirety of the escrowed amount. Woodrock claims that it is owed 7% of TTV and it argues that TTV is equal to $9,886,128. To calculate TTV, Woodrock added the cash purchase price for the Mexican Assets, $5,390,500, to $4,495,628 in liabilities derived from the balance sheets of the Mexican Subsidiaries: $68,896 on IDN's balance sheet and $4,426,732 on Allisteros' balance sheet. Then, Woodrock multiplied that value by 7% to arrive at $692,028.96. Woodrock asserts that part (ii) of the second sentence of the TTV definition requires addition of the liabilities of the Mexican Subsidiaries.

The Debtor objected to Woodrock's calculation of TTV and filed a motion for summary adjudication on May 25, 2012 asking this Court to find that:

> The liabilities of Astilleros and IDN, the Debtors' Mexican subsidiaries, cannot be included in the measure of Total Transaction Value as defined in the Engagement Agreement, under the stock sale transactions set forth in the two SPAs that provided for the sale of such subsidiaries to TMM and its designees.

In response, Woodrock moved for summary adjudication and asked this Court to find that "the liabilities on the balance sheets of Astilleros and IDN…must be included in the measure of Total Transaction Value." Woodrock also argued in opposition to the Debtor's motion for summary adjudication that, at a minimum, a genuine issue of material fact exists as to whether liabilities were to be included in the computation of TTV.

LAW

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. A court shall grant summary judgment to a moving party when the movant shows that "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2502, 91 L.Ed. 2d 2020 (1986), the Supreme Court

4

Case 09-12616    Doc 1850    Filed 08/10/12    Entered 08/10/12 09:34:58    Desc Main
Document    Page 4 of 10

found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 477 U.S. at 249-50. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); *Allen v. Bd. Of Public Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007). The moving party bears the burden of proving there is no issue as to any material fact and that judgment should be entered as a matter of law. Fed. R. Bankr. Pro. 7056.

This Court must decide whether the liabilities of the Debtor's Mexican Subsidiaries should properly be included in the computation of Total Transaction Value ("TTV"). The resolution of this issue requires the Court to construe the terms of the Engagement Agreement. The Engagement Agreement contains a contractual choice of law provision for interpretation of its terms; therefore, Texas contract law dictates the rules of construction. *In re Slepian*, 170 B.R. 712, 713 (Bankr. S.D. Ala. 1994) (explaining that Alabama law recognizes the right of contracting parties to choose which law should control).

The contractual provision in question in this case is the definition of TTV. TTV is defined as

> [T]he total amount of cash and the fair market value (on the date of payment) of all other property paid or payable directly or indirectly (i) to the Company, its shareholders, employees, or security holders, (ii) by the Company, its partners, employees, or security holders, or (iii) into any new entity or joint venture. Total Transaction Value shall also include (i) amounts paid or payable pursuant to covenants not to compete and making due allowance, without limitation, for amounts payable pursuant to employment contracts, consulting agreements, employee benefit plans, or other similar arrangements, and **(ii) the value of any liabilities (including the principal amount of any indebtedness for borrowed money) repaid, retired, and/or assumed in**

5

> **connection with or in anticipation of an M&A Transaction, or existing on the balance sheet of the Company or any other party involved in an M&A Transaction (in the case of a merger, a purchase, or other transfer of stock or similar transaction) or assumed directly or indirectly by the Company or such other party (in the case of a purchase or other transfer of assets or similar transaction).**

(emphasis added).

The parties agree that the first sentence of the TTV definition refers to the cash purchase price of $5,390,500. As such, TTV is at least equal to that value. The parties also agree that part (i) of the second sentence of the TTV definition is inapplicable in this case. Beyond that, they disagree.

To resolve a contract interpretation issue, the best place to begin is with the language itself. The terms of a contract are given their plain, ordinary, or customary meaning unless the contract as a whole demonstrates that the terms are to be understood in a different way. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). In *Frost National Bank v. L&F Distributors, LTD.*, 165 S.W.3d 310 (Tex. 2005), the Supreme Court of Texas detailed the following rules of construction:

> In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the document. We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. We construe contracts "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. On the other hand, a contract is ambiguous if it is susceptible to more than one reasonable interpretation.

*Id*. at 311-12 (construing the terms of a contract in the summary judgment context) (internal citations omitted).

The contractual language at issue is located in part (ii) of the second sentence of the TTV definition. It details the circumstances in which the value of any liabilities should be included in TTV. In its first clause, part (ii) clearly indicates that if any liabilities are repaid, retired, and/or assumed in connection with an M&A Transaction, then the value of those liabilities should be included in TTV. Like the first clause of part (ii), the third clause indicates that the value of any liabilities "assumed directly or indirectly by the Company or such other party (in the case of a purchase or other transfer of assets or similar transaction)" should be included in TTV. There is no ambiguity in the import of these provisions. The sale of the Mexican Assets was an M&A Transaction pursuant to the broad definition detailed in the Engagement Agreement. Therefore, the question is whether any liabilities were repaid, retired, and/or assumed in connection with that sale.

The Debtor insists in its objection and motion for summary judgment that no liabilities were assumed in conjunction with the sale. The Debtor provides no support for that statement. Instead, the Debtor argues that the acquisition was completely cash-based and that the Mexican Assets were sold free and clear of any encumbrances. However, that the assets were sold free and clear of all of the Debtor and various creditor claimants' liens, claims, and causes of action does not preclude the assumption of certain liabilities by the purchaser TMM.

Woodrock argues that the parties, through negotiations, determined that the purchase price of the Mexican Assets was closer to $8 million as opposed to the roughly $5.5 million purchase price, but that the cash price would be discounted to account for the existing liabilities on the Mexican Subsidiaries balance sheets. This Court's Order approving the sale of the Mexican Assets supports that assertion. At paragraph 19, in connection with barring and enjoining any actions by the Debtor and related creditor entities against the purchasers, it

7

qualifies the release by stating: "Except for those liabilities that are explicitly assumed pursuant to the express terms of the IDN SPA and the Astilleros SPA." Likewise, in paragraph 21 it states that "Nothing herein shall be deemed to release any of the Purchaser Parties from any Claims or Causes of Action that are explicitly assumed pursuant to the express terms of the IDN SPA or the Astilleros SPA." The Mexican Subsidiaries' balance sheets were included with the SPAs that were considered by this Court in approving the sale.

This Court agrees with Woodrock that, at a minimum, a genuine issue of material fact exists as to whether liabilities were repaid, retired, and/or assumed in connection with the sale of the Mexican Assets. Therefore, the Debtor has not satisfied its burden and the Court cannot find, as the Debtor requests, that "the Debtors' Mexican subsidiaries, cannot be included in the measure of Total Transaction Value."

Woodrock's cross motion for summary adjudication argues that the second clause of part (ii), as a matter of law, requires inclusion of the Mexican Subsidiaries liabilities in the calculation of TTV. Woodrock shoulders the burden to demonstrate that no genuine issue of material fact exists entitling it to judgment as a matter of law.

The second clause of part (ii) states that the value of any liabilities "existing on the balance sheet of the Company or any other party involved in an M&A Transaction (in the case of a merger, a purchase, or other transfer of stock or similar transaction)" should be included in TTV. From a contract interpretation standpoint, this clause presents two issues. First, which entities' balance sheet(s) should be considered? The language of the clause is clear that the balance sheets of a wide variety of entities could properly be considered in adding liabilities to TTV. The definition of Company includes any combination of the Debtor, the Debtor's subsidiaries, joint venture entities, and/or off balance sheet vehicles. Furthermore, in the clause,

8

Company is followed by "or any other party involved in an M&A Transaction." Party involved is not a defined term and could encompass the Debtor, either or both Mexican Subsidiaries, and the purchaser TMM. So, according to the language of the clause, those liabilities existing on the balance sheet of the Company, which could be any number of entities, *or* of an undefined "party involved" in the M&A Transaction, could be included in TTV. Woodrock argues that the parties involved are the Mexican Subsidiaries and, therefore, it included in its calculation of TTV only the liabilities contained in the Mexican Subsidiaries balance sheets. The Debtor argues that this is an arbitrary choice that should not be given effect. A material question of fact exists as to which entities the parties intended to be the subject of the second clause of part (ii).

The second issue with the second clause of part (ii) involves the parenthetical "(in the case of a merger, a purchase, or other transfer of stock or similar transaction)." The Debtor argues that this parenthetical makes clear that the balance sheets of parties involved should only be considered in merger transactions. In support, the Debtor argues that the language "or similar transaction" refers back to the word "merger," making the entire parenthetical pertain to mergers. The Debtor also points to the separate compensation options for mergers versus acquisitions in the Engagement Agreement as indicating an overall theme of separating mergers and acquisitions in the Agreement. This Court disagrees. The plain language of the parenthetical is not restricted to merger transactions alone. To hold otherwise would read the words "a purchase, or other transfer of stock" completely out of the parenthetical. Texas courts "presume that words that follow one another are not intended to be redundant." *Alpert v. Riley*, 274 S.W.3d 277, 288 (Tex. Ct. App. 2008). The plain language indicates that in M&A Transactions that involve either mergers, purchases, or other transfers of stock TTV includes the value of any liabilities existing on the balance sheets of "the Company or any other party involved."

9

However, as discussed above, a genuine issue of material fact exists regarding which parties' balance sheets should be considered. That question is one of intent that will require testimony or other evidence and is not properly decided at the summary judgment stage.

Woodrock has failed to establish that no genuine issue of material fact exists regarding whether the liabilities of the Mexican Subsidiaries must be included in the calculation of TTV. Therefore, its cross motion for summary judgment is denied.

IT IS ORDERED:

1. The Post-Confirmation Debtor's Motion for Summary Adjudication is DENIED;

2. Woodrock & Co.'s Cross-Motion for Summary Adjudication is DENIED;

3. The remaining issues regarding Woodrock's Application for Fees and the Post-Confirmation Debtor's objection are set for pre-trial on September 11th at 8:30 a.m.


Dated:   August 9, 2012


*Margaret A. Mahoney* (signature)
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE