UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

BENDER SHIPBUILDING AND
REPAIR CO., INC,

Case No. 09-12616-MAM

Debtor.

# ORDER GRANTING HENRY MARINE SERVICES, INC. AND HENRY PROPERTIES, LLC'S MOTION FOR ADDITIONAL RELIEF AND MOTION TO AMEND

William G. Chason, Attorney for Henry Marine Services, Inc. and Henry Properties, LLC, Mobile, Alabama
Norman M. Stockman and Douglas W. Fink, Attorneys for the Debtor, Mobile, Alabama

This matter is before the Court on the Henry Marine Services, Inc. and Henry Properties, LLC's motion for additional relief from this court's confirmation order and to amend this court's August 12, 2012 order. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. For the following reasons, Henry Marine Services, Inc. and Henry Properties LLC's motions are GRANTED.

FACTS

Bender Shipbuilding and Repair Co., Inc. ("Bender") sued Henry Marine Services, Inc. ("HM") on January 10, 2008 in Mobile County Circuit Court in case No. CV-2008-900048. The suit claimed that HM's drydock sunk on January 19, 2006 and slid underneath Bender's drydock. On May 19, 2008, HM answered the complaint and filed a counterclaim asserting that Bender's dredging caused the problem. The counterclaim stated that Bender's dredging harmed HM's

1

Case 09-12616   Doc 1879   Filed 09/17/12   Entered 09/17/12 14:40:29   Desc Main
Document     Page 1 of 9

"riparian and/or property rights." HM alleged that the violations caused erosion of HM's property and made the river bank "unstable and unsafe."

In conjunction with that lawsuit, on January 12, 2009, HM responded to Bender's interrogatories and stated that Henry Properties LLC ("HP") was the owner of the property and had been since January 5, 2001. Moreover, in those same interrogatory responses, HM asserted that it was seeking damages to compensate for or to repair the erosion caused by Bender's dredging. Bender then sued the dredging companies with whom it contracted for damages if Bender was held liable in any manner to HM.

An involuntary bankruptcy case was filed against Bender on June 9, 2009. Bender consented to the bankruptcy filing on July 1, 2009 and the case was converted to one under Chapter 11 of the Bankruptcy Code. The claims bar date was set as March 31, 2010 in Bender's bankruptcy case.

On February 4, 2010, HM filed a motion for relief from the automatic stay in Bender's bankruptcy case in order to defend against Bender's claims in the state court suit and to prosecute its counterclaims. The motion for relief stated that HM sought damages in the state court action for recovery and repair of its dry dock, lost profits and business, costs to restore its shoreline, and diminution of its real property value. On March 29, 2010, HM filed a proof of claim seeking $432,455.74 in compensatory damages including costs associated with "recovering its dry dock and costs related to repairing its dry dock." HM's proof of claim also sought an undetermined amount of compensatory damages for "lost profits, business opportunities, and use of its dry dock;" an undetermined amount of compensatory damages to "restore its shoreline and to secure its shoreline from eroding in the future;" and an undetermined amount of compensatory damages "for the decrease of its property value." On September 16,

2

Case 09-12616   Doc 1879   Filed 09/17/12   Entered 09/17/12 14:40:29   Desc Main
Document      Page 2 of 9

2011, relief from stay was granted to allow HM to obtain a judgment against Bender and to collect any insurance proceeds payable due to the suit.

On October 26, 2011, HP was added to the state court suit by an amended counterclaim (the "first amended counterclaim") and HM also cross-sued against the dredging companies. On June 15, 2012, HM and HP (collectively, "HM/HP") filed a second amended counterclaim (the "second amended counterclaim") seeking a declaratory judgment as to (1) the location of the riparian line between HP's property and Bender's property, (2) the necessity (or not) of a dredging permit from the State, and (3) the validity of Bender's permit from the Corps of Engineers. HM/HP also sought to add Eastbank Industries, Inc. ("Eastbank") and Scouler & Company ("Scouler") as parties it was suing.

On December 9, 2010, a joint plan of liquidation (the "Plan") in the Bender bankruptcy case was confirmed by this court. The confirmation order contained language enjoining "the commencement or prosecution by any entity, whether directly or derivatively or otherwise, of any claims, obligations, suits, judgments, damages, debts, rights, Causes of Action or liabilities released, enjoined and/or exculpated pursuant to the Plan." The Plan at ¶ 12.8 mirrors that injunction. The Plan named Scouler as Plan Administrator and gave it full indemnity. In addition, certain entities, including East Bank (then known as Bender Shipbuilding and Repair Co., Inc.), were released from all claims against them as part of the plan. The released parties paid roughly $10,000,000 into the pool of money that is being used to pay creditors of Bender's estate.

In the Definition of Terms section of the Plan, under Article 1.1, "Causes of Action" are defined as

> any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, Claims, claims and demands

3

> whatsoever, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Involuntary Date or during the course of the Bankruptcy Case, including through the Effective Date, including, without limitation, counterclaims, setoff or offset rights, and avoidance actions arising under chapter 5 of the Bankruptcy Code.

The plain language of the definition includes all claims arising prepetition and counterclaims. Bender's cause of action against HM was retained in the Plan as an asset to be dealt with by the Plan Administrator. On June 7, 2011, Bender changed its name to Eastbank Industries, Inc., but it is the same company as the prepetition debtor-in-possession. Bender had a general marine liability policy that covered property damage. The insurer stated in a letter of August 20, 2009 that the policy likely covered the erosion damage alleged by HM, but not the riparian rights claim.

On July 12, 2012, Bender filed a motion to enforce the confirmation injunction against HM/HP's first and second amended counterclaim. Bender argued that Eastbank and Scouler were added to the suit without leave of this court and that such action violated the Plan and the confirmation injunction. Bender argued that the new claims made by HM/HP were similarly barred. HM/HP filed an opposition to Bender's motion to enforce. After hearing oral argument, this court entered an order on August 13, 2012 granting Bender's motion. The order stated the following:

> [T]he Court finds that the claims in the first amended counterclaims and second amended counterclaims filed by [HM] and [HP] against [Bender] and others violated the Confirmation Order injunction and that only the original counterclaims filed by [HM] against [Bender] were permitted under this Court's September 16, 2011 Order awarding [HM] certain relief from the Confirmation Order injunction.

On August 17, 2012, HM/HP filed this motion to amend the court's August 13, 2012 order and to obtain additional relief from the order confirming Bender's plan. HM/HP argue that the

4

various filings in this court and the state court suit by HM constituted an informal claim on behalf of HP and, if not, argued that HM/HP could properly pursue their claims against any available insurance. Bender opposed the requested relief. This court heard oral argument and took the matter under advisement on September 4, 2012.

LAW

In this court's view, HM/HP's motion raises three issues:

1. Can the proof of claim of HM be amended to include HP?

2. Do the documents filed in the bankruptcy or state court case constitute an informal proof of claim by HP?

3. If the answer to either issue 1 or 2 is yes, what happens to the claim?

Those issues will be discussed in turn.

1.

HM's proof of claim can be amended to add HP. Federal Rule of Bankruptcy Procedure 7015, which incorporates Federal Rule of Civil Procedure 15, has been used by courts to determine whether proofs of claim can be amended after the claims bar date. *In re marchFirst, Inc.*, 431 B.R. 436, 443 (Bankr. N.D. Ill. 2010); *In re MK Lombard Group I, Ltd.*, 301 B.R. 812, 815 (Bankr. E.D. Pa. 2003) ("[A]mendments to timely proofs of claim have been liberally allowed where the amendment would not work any prejudice or be otherwise inequitable."). Rule 15(c) supports amendment of a late filed proof of claim "if the facts remain the same and have 'been brought to [the] defendant's attention' by the original complaint." *Id.* Moreover, leave should be "freely given when justice so requires." *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997). Thus, the issue is whether the amendment substantively changes the claim or not. If not, then the amendment should be allowed.

5

Here, amending HM's proof of claim by adding HP as the property owner does not substantively change the claims made against Bender. *Gens*, 112 F.3d at 575 ("[A] simple substitution of the real part in interest for a related party…listed in the original [proof of claim] represents a proper ground for amendment."). HM's proof of claim incorporated the original counterclaim filed by HM in the state court lawsuit. The claims made in the first amended counterclaim, which added HP as a party, and the second amended counterclaim, allege the same facts and issues involving interference with riparian rights, damage caused by dredging, and problems with Bender's permits that were asserted in the original counterclaim. Moreover, by virtue of the discovery exchanged between the parties, Bender knew HP was the actual property owner.

As such, Bender was on notice of the claims and is not prejudiced by allowing amendment of HM's proof of claim to add HP. As stated by the bankruptcy court in *marchFirst*, 431 B.R. at 443, "[a] late amendment to a proof of claim will…be allowed only if, among other things, it is not 'a veiled attempt to assert a distinctly new right to payment' but one to which the original claim 'fairly alerted' the parties." Bender was fairly alerted to the claims against it by the original counterclaim. Therefore, the proof of claim may be amended.

2.

The documents filed by HM in the bankruptcy case and in the state court case constitute an informal proof of claim by HP. The 11th Circuit in *In re Charter Co.*, 876 F.2d 861 (11th Cir. 1989), detailed the considerations courts make in determining whether an informal proof of claim has been filed. First, a court must ask whether a document (or documents) "apprise[d] the court of the existence, nature, and amount of the claim (if ascertainable)" and, second, the court must ask whether the document (or documents) made "clear the claimant's intent to hold the

6

Case 09-12616    Doc 1879    Filed 09/17/12    Entered 09/17/12 14:40:29    Desc Main
Document      Page 6 of 9

debtor liable for the claim." *Id*. at 863-64. In *Charter* the court held that a motion for relief from the automatic stay filed in the debtor's bankruptcy case constituted an informal claim. *Id*. at 864.

The first requirement, whether the documents filed by HM in Bender's bankruptcy case and the state court case apprised Bender of the existence, nature, and amount of HP's claim, is met in this case. HM filed a proof of claim in Bender's bankruptcy case prior to the claims bar date. HM's proof of claim is derived from a state court action filed by Bender against HM where HM filed a counterclaim. That counterclaim is incorporated into the proof of claim and the counterclaim is attached. The parties exchanged discovery in the state court case that put Bender on notice that HP was the owner of the property that was allegedly damaged by Bender. HP was added to the case by amendment to the original counterclaim. HP and HM assert the exact same claim and Bender has been aware of HM's claim since well before the claims bar date. Therefore, like HM's claim, Bender has been aware of the existence and nature of HP's claim for some time now.

The second requirement is also met. The documents filed in Bender's bankruptcy case and the state court case by HM made clear HP's intent to hold Bender liable. HP was added as a co-defendant and counter-plaintiff in the state court suit with HM. At the risk of being redundant, HM and HP assert the same claims against Bender. The proof of claim filed by HM in Bender's bankruptcy case, along with the motion for relief from stay, demonstrate HM and HP's intent to hold Bender liable for the actions alleged in the original and amended counterclaims.

Therefore, HP filed an informal claim in Bender's bankruptcy. Generally, the party seeking to prove the existence of an informal proof of claim is the party that filed a document in the debtor's bankruptcy case. However, this case presents a unique set of facts. HP and HM assert the exact same claims in the state court case. HP is merely the real party in interest in the

7

state court case that makes the basis of HM's proof of claim and Bender has been on notice of HP's claims for a long time. This court believes that, under the facts of this case, HP filed an informal proof of claim.

3.

Since the answer to the first and second issues is yes, it must be determined what that means for HM/HP's claim. This court holds that HM and HP may proceed in state court with their counterclaims to determine the claim amount, if any, and to reduce it to judgment. Further, they may collect any judgment obtained against insurance, if available.

HM and HP seek, as part of determining damages and as declaratory relief, a determination of HP's riparian rights. Specifically, they ask the state court to determine where a riparian line exists between HP's and Bender's properties. The request for declaratory relief is an equitable claim. It is clearly covered by the confirmation injunction in the Plan and the releases. HM and HP had notice of the bankruptcy filing and had opportunity to object to the Plan and its components. This court believes that the state court can determine HP's riparian rights without offending the Plan and releases. Such a determination is necessary for a decision as to the location of the riparian line which, in turn, is necessary to determine HM/HP's damage claim according to applicable law. *See Spottswood v. Reimer*, 41 So. 3d 787 (Ala. Civ. App. 2009).

Bender argues that determining the riparian line would potentially cause it damage because it could stand to lose property from such a determination. To Bender, that result would violate the Plan injunction and the releases. This court is only holding that the state court may determine the riparian line to the extent it is necessary to resolve the other issues in the case, like extent of damages. A statement by the state court that determines that the riparian line has always been at a certain location does not result in a loss of property to Bender. Bender cannot

8

lose property that it never actually had. The court is not allowing the line to be moved to any new location. The court is aware that the parties possibly disagree about where the riparian line was in 2006. The fact that Bender believes it was at one location and HM and HP believes it was at another does not mean that the state court judge will be moving the line. In light of the disagreement, the judge will only be concluding where the riparian line was in 2006 and remains today.

THEREFORE IT IS ORDERED

1. Henry Marine Services, Inc. and Henry Properties, LLC's motion for additional relief from this court's confirmation order and to amend this court's August 12, 2012 order is GRANTED;

2. Henry Marine Services, Inc. may amend its proof of claim to include Henry Properties, LLC;

3. Henry Marine Services, Inc. and Henry Properties, LLC may proceed in their state court suit with Bender and the state court may determine the amount of damages, if any, that are owed to Henry Marine Services, Inc. and/or Henry Properties, LLC and reduce that amount to judgment;

4. Any judgment obtained may only be collected against any available insurance or by virtue of the unsecured claim filed in Bender's bankruptcy case.

Dated: September 17, 2012

_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE