UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

BENDER SHIPBUILDING AND
REPAIR CO., INC,

Case No. 09-12616-MAM

Post-Confirmation Debtor.

**ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE POST-CONFIRMATION DEBTOR**

J. Daniel Barlar, Jr. and Kristine K. McCulloch, Attorneys for B&D Contracting, Inc., Mobile, Alabama
Craig A. Wolfe, Attorney for the Post-Confirmation Debtor, New York, New York

At issue is the Post-Confirmation Debtor's motion for summary judgment as to its objection to the claim filed of B&D Contracting, Inc. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. For the following reasons, the Post-Confirmation Debtor's motion is GRANTED.

FACTS

Bender Ship Building & Repair Co., Inc. ("Bender" or, after December 27, 2010, the "Post-Confirmation Debtor") was the subject of an involuntary bankruptcy petition on June 9, 2009. The petition was filed under chapter 7 of the Bankruptcy Code, but on July 1, 2009, the case was converted to a chapter 11 matter. A plan of liquidation was confirmed on December 9, 2010. The effective date of the plan was December 27, 2010.

On March 31, 2010 B&D Contracting Inc. ("B&D") filed a proof of claim in Bender's case for $1,190,268.50, asserting a wage priority pursuant to 11 U.S.C. §507(a)(4). On December 7, 2010 B&D amended its claim to reduce the wage priority to $495,019.77 and asserting $695,245.73 as a general unsecured claim. Attached to the amended proof of claim was

1

a list invoices meant to support B&D's entitlement to its claim amount. The first invoice was from November 21, 2008 and the last was from February 26, 2009.

On February 6, 2013, the Post-Confirmation Debtor filed its *Sixth Omnibus Objection to Fix and Allow Certain Claims in Filed or Agreed Amount* for an order fixing and allowing certain claims, including claim no. 227 filed by B&D as a general unsecured claim in the amount of $1,190,268.50. On February 28, 2013, B&D filed a response in opposition to the objection. On June 18, 2013, the Post-Confirmation Debtor filed a motion for summary judgment on its objection. B&D responded in opposition on June 25, 2013. The court held a hearing on July 2, 2013 and took the matter under advisement.

The parties stipulated to the following facts:

1. B&D is a Louisiana corporation rather than an individual.

2. Bender and B&D were parties to a Temporary Labor Contractor Agreement, dated February 4, 2005 (the "Agreement"), that provided certain of the terms and conditions for B&D providing temporary workers to Bender.

3. The Agreement contains no payment terms, nor specific procedures for the placement and management of temporary workers at Bender.

4. Neither B&D nor the Post-Confirmation Debtor is aware of any written agreements between Bender and the workers.

5. B&D asserts that its normal practice, prior to the Conversion Date, was to obtain from each worker a written document entitled Consent to Payroll Deductions.

6. Other than the foregoing Consent to Payroll Deductions and paychecks to the individual workers, B&D has no additional written documents that existed prior to the Conversion Date to support the alleged assignment to B&D of any claim by the workers for

2

unpaid wages, salaries, or commissions, including vacation, severance, and sick leave pay, owed to the workers for their services at or for Bender.

7. B&D is unaware of any Federal and state taxes or other withholdings that remain owing for any services of the individual workers at or for Bender as such amounts were paid by B&D.

8. B&D is unaware of any unpaid wages, salaries, or commissions, including vacation, severance, and sick leave pay, that remained owing to any of the individual workers for their service at or for Bender as such amounts were paid by B&D to the workers.

9. Beginning in November 2010, B&D began obtaining documents executed by the workers who B&D provided to Bender that purport to assign the workers' claims against Bender to B&D. Such documents state that the assignment is of "any and all right or interest which Assignor may have or have had, whether past, present, or future, to bring any claim for wages, in any form and through any legal process, against [Bender]."

The following facts are also pertinent:

B&D filed an affidavit of its owner, Wayne Davis. In it, Mr. Davis testified the Agreement provided some of the terms and conditions for B&D providing temporary workers to Bender. He explained that the Agreement contained no payment terms or procedures for the placement or management of temporary workers at Bender. According to Mr. Davis, Bender provided criteria for prospective workers to B&D and B&D would, in turn, recruit individuals for Bender. He explained that the workers that Bender hired would work on Bender jobs, at Bender facilities, using Bender equipment and tools. B&D did not provide tools, equipment, or instruction to the workers. He stated that Bender managed, supervised, and directed the workers and was responsible for the hiring, firing, and disciplinary decisions with regard to the workers.

3

Mr. Davis testified that Bender would provide weekly earnings reports to B&D for hours actually worked and B&D would pay the workers based upon that information.

The Temporary Labor Agreement states that "all persons sent by it to Bender under the terms of this Agreement will be treated as employees of [B&D]." It requires B&D to withhold all required income, social security, and other taxes from the wages of the temporary employees provided to Bender. It also requires B&D to maintain insurance with regard to the temporary workers, including workers' compensation coverage.

Some portion of the $495,019.77 claimed by B&D as priority includes "mark-up" and profit amounts, which are in addition to the amounts B&D paid in wages to the temporary employees. B&D conceded that it would only be entitled to the actual wages paid to employees as priority claims and not any additional "mark-up."

The Consent to Payroll Deductions relied upon by B&D allowed B&D to deduct 14 enumerated categories of expenses, to the extent allowed by law, from the temporary worker's wages. One such deduction was "Assignment of earnings (wages)." Fourteen separate Consent to Payroll Deductions were attached to the stipulation of facts filed by the parties. Those documents do not elaborate on the "Assignment of earnings (wages)" category of deductions.

LAW

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. A court shall grant summary judgment to a moving party when the movant shows that "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2502, 91 L.Ed. 2d 2020 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 477 U.S. at 249-50. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); *Allen v. Bd. Of Public Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007). The moving party bears the burden of proving there is no issue as to any material fact and that judgment should be entered as a matter of law. Fed. R. Bankr. Pro. 7056.

The facts necessary for resolution of this matter are undisputed. The issue in this case is whether B&D is entitled to a 11 U.S.C. § 507(a)(4) wage priority claim for $495,019.77. Section 507(a)(4) grants priority to allowed unsecured claims for wages due to individuals if those wages were earned within 180 days of the petition date. "The purpose of allowing a priority for wages is to alleviate hardship on workers who lose their jobs or part of their salary by bankruptcy." 4 *Collier on Bankruptcy* ¶ 507.06[1] (16th Ed. 2012). In line with that, wage priority claims may only be asserted by individuals. *In re Wang Lab., Inc.*, 164 B.R. 404, 405 (Bankr. D. Mass. 1994). However, assignees of wage priority claims, including non-individual assignees like

corporations, are entitled to the wage priority of their assignors. *In re Allen Carpet Shops, Inc.*, 27 B.R. 354, 357 (Bankr. E.D.N.Y. 1983).

Whether B&D is entitled to priority for the asserted claim amount is dependent on three things: (1) whether B&D received valid assignments of (2) valid wage priority claims owed to the temporary workers which were (3) employees of Bender. If, instead, B&D's claim arises solely from the Agreement between Bender and B&D, then its claim is not entitled to any priority. In that case, B&D's claim is a general unsecured claim in its entirety.

This court finds that the undisputed facts show that the claim asserted by B&D is based on contract damages and not assigned wage priority claims. Even if this court assumes that the temporary workers were employees of Bender, B&D cannot show valid assignments of outstanding wage claims to B&D. The Consent to Payroll Deductions do not amount to an assignment of any wages from the temporary workers to B&D. At most, those documents indicate that if wages are later assigned by the employees, such wages can be deducted from the employee's payroll. They are not valid assignments of the employee's wage claims. Moreover, as noted by the Post-Confirmation Debtor, an assignment of future wages is void under Alabama law. Ala. Code § 8-5-21 (1975).

The other set of assignments, executed in December 2010, are potentially valid under Alabama law. *See LPP Mortgage, Ltd. v. Boutwell*, 36 So. 3d 497, 501 (Ala. 2009) (requiring an intention to transfer a present interest in the subject matter of a contract and mutual assent in order to effectuate an assignment). However, those assignments were only capable of transferring to B&D what the temporary workers had to transfer. At the time of the assignments, November 2010 and onward, the temporary workers had no wage claims against Bender because they had already been paid by B&D prior to the filing of the involuntary petition. The undisputed

facts show that the last invoice listed in support of B&D's proof of claim was from February 26, 2009. That date was well before the involuntary petition was filed. After that, B&D was only left with its claims against Bender pursuant to the Agreement.

B&D argues that under the United States Supreme Court's opinion *Shropshire, Woodliff & Co. v. Bush*, 204 U.S. 186 (1907), it is irrelevant to the wage priority question that the employees were not owed any wages when the wage priority claim was asserted. In *Shropshire*, considering a predecessor to § 507(a)(4), the Court stated:

> It nowhere expressly or by fair implication says that the wages must be due to the earner at the time of the presentment of the claim, or of the beginning of the proceedings, and we find no warrant for supplying such a restriction. Regarding, then, the plain words of the statue, and no more, they seem to be merely descriptive of the nature of the debt to which priority is given. When one has incurred a debt for wages due to workmen, clerks, or servants, that debt, within the limits of time and amount prescribed by the act, is entitled to priority of payment. The priority is attached to the debt, and not to the person of the creditor; to the claim, and not to the claimant.

In so holding, the Supreme Court determined that a wage earner's valid wage priority claim could be assigned pre-petition. This court does not disagree with that holding and the case law since *Shropshire* has carried it forward. *See In re Dahlman Truck Lines, Inc.*, 59 B.R. 218, 220 (Bankr. W.D. Wisc. 1986) (citing cases). However, the Supreme Court did not hold that a wage earner's claim which was paid pre-petition may later be assigned, allowing the assignee to assert the wage earner's priority despite the claim's prior satisfaction. Once a claim is paid, the priority which follows the claim under the Supreme Court's rule is gone.

In this case, when the wage claims of the temporary workers were paid by B&D, the priority of those claims ceased and B&D was left holding only its rights under the Agreement. B&D cannot assert a priority claim for those contract damages. That result makes sense when one considers that the purpose of the wage claim priority rule is to protect individual employees

7

Case 09-12616    Doc 2030    Filed 07/11/13    Entered 07/11/13 10:31:58    Desc Main
Document    Page 7 of 8

from the harmful effects of the bankruptcy of their employer. Here, those individuals were paid pre-petition and did not need the protection of the rule.

Moreover, B&D has not demonstrated that the $495,019.77 it seeks as wage priority is comprised of assigned wages as opposed to mere contract damages. B&D's claim includes its mark-up, which was made pursuant to the Agreement between B&D and Bender. B&D's claim does not break down the wages earned by specific employees or demonstrate what amounts were paid over and above B&D's profit mark-ups. The bankruptcy court in *Dahlman Truck Lines*, 59 B.R. at 219 n.3, found it significant that the proof of claim asserted in that case seeking wage priority status was based upon the gross amount due under a trucking services contract rather than the exact amount of wages paid to employees. Similarly, the bankruptcy court in *In re Mel-Hart Products, Inc.*, 156 B.R. 606 (Bankr. E.D. Ark. 1993), denied Sunmark Holding Company, Inc. wage priority status where Sunmark provided the debtor with employees pursuant to a "Client Service Contract" and Sunmark paid the employees but billed the debtor for the amounts paid to employees plus a 19.38% service mark-up. The claim made by B&D in this case is like the claims made in *Dahlman* and *Mel-Hart Products* because it finds its genesis in the Agreement between B&D and Bender rather than wages owed to the temporary workers.

THEREFORE IT IS ORDERED

1. The Post-Confirmation Debtor's Motion for Summary Judgment on its Objection to B&D's proof of claim No. 227 is GRANTED;

2. As a result, the Post-Confirmation Debtor's Objection to B&D's proof of claim No. 227 is SUSTAINED and B&D's $1,190,268.50 claim is a general unsecured claim in its entirety and not entitled to priority status.

Dated: July 11, 2013

*Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

8

Case 09-12616   Doc 2030   Filed 07/11/13   Entered 07/11/13 10:31:58   Desc Main
Document      Page 8 of 8